SOMMERVILLE, J.'
'"Plaintiffs are the four major children of the late B. R. Williams and his wife, Mrs. Lillie D. Harrell. They are claiming from their uncle, S. P. Harrell, the defendant, four-fifths interest in and to certain property inherited by their mother, Mrs. Lillie D. Williams, from their grandparents, the late J. O. Harrell and his wife, Prances R. Harrell. They allege that their mother, Mrs. Lillie D. Williams, was one of six children, and that her interest in the succession of her parents is therefore one-sixth, and that their interest is four-fifths of one-sixth' of the property involved, or four-thirtieths of the whole.
The several tracts of land claimed will be referred to for convenience (1) as the J. C. Harrell tracts, which were owned by plaintiffs’ grandfather; (2) the Prances R. Harrell tracts, which were owned by plaintiffs’ grandmother; and (3) the Alman tract, purchased by the heirs of J. C. and Prances R. Harrell at sheriff’s sale May 5, 1877, during the minority of plaintiffs’ mother.
Defendant answers that he is the sole owner of the said several tracts of land; that he acquired the Prances R. Harrell tracts at a tax sale June 24, 1893; and that he acquired the J. O. Harrell tract in section 11 at a tax sale of date July 18, 1896, and that the J. O. Harrell tract in section 12 was sold by the heirs of J. 0. Harrell to L. P. Hartzo August 18, 1885, and that defendant acquired that tract from L. P. Hartzo at a tax sale July 23,1892, and also by purchase from said Hartzo July 20, 1893. Defendant claims the Alman tract, in section 34, by mesne conveyances, conventional and tax sales, through several persons.
There was judgment in favor of defendant, and plaintiffs appeal.
Defendant and plaintiffs trace their titles to their parents and grandparents, respectively, J. C. Harrell and Mrs. Prances R. Harrell. Plaintiffs and defendant were co-owners at the time that the tax ' sales' were made. Therefore it is well settled in such case that defendant acquired the tax titles to the several tracts of land for the joint benefit of himself and his co-owners.
There will have to be an accounting between the owners of these pieces of property; but it cannot be had in this suit, for the reason that it is not claimed, and there is no evidence in the record upon which to base it. Defendant has paid the taxes upon the property, and there may have been other expenses which he paid. At the same time he has had the use of the property, and has received revenues therefrom.
[1, 2] The following decisions are decisive of the point that a co-owner who acquires a tax title holds for the benefit of his co-owners. Hake v. Lee & Beall, 106 La. 482, 31 South. 54; Bossier v. Herwig, 112 La. 539, 36 South. 557; Alexander v. Light, 112 La. 925, 36 South. 806; Harris v. Natalbany Lumber Co., 119 La. 978, 44 South. 806; Washington v. Filer, 127 La. 862, 54 South. 128; Miller v. Vivian Oil Co., 131 La. 761, 60 South. 236.
At the time that these several pieces of property were sold for taxes they had little or no value. The value thereof has materially increased during the past two years, due to the fact that the land is located within the Caddo oil fields in this state.
[3] Defendant pleads the prescription of three and ten years; but prescription does not run between co-owners. Defendant has not acquired a title adverse to plaintiffs. Alexander v. Light, 112 La. 925, 36 South. 806.
Defendant in his testimony attempts to show that the mother of plaintiffs had acquiesced in the sales made to him, the defendant, for the taxes due upon the property. *6 The first tax sale was made June 24, 1893, and the second tax sale, July 11, 1896. Mrs. Williams, the mother of plaintiffs, died in December, 1894, or January, 1895. The date of death does not appear to be certain. She was certainly dead at the time of the second tax sale, in July, 1896, and could not, therefore, have acquiesced in the purchase made at that time by defendant. And the plaintiffs, who were then minors, could not have acquiesced therein. Defendant, being asked concerning the tax sale in 1893, testified in answer to questions as follows:
“Q. After you had bought that property at tax sale, did you have any conversation with the mother of these minors about it, and, if so, what was the conversation? A. Yes, sir. They told me that they considered the land worth nothing, and would not pay the taxes on it for it, as they considered it worthless. Q. Would you have been willing, if they had paid the taxes — that is, their proportion of the taxes — to have made them a deed to the land? A. Yes, sir. Q. You gave them an opportunity to do that? A. Yes, sir; it was my father’s old homestead, and I had tried to keep it in the family, not that it was worth the money. I did not want any one else to own it. Q. Now, you bought this property at tax sale after the death of Mrs. Williams? A. Yes, sir.”
The quoted testimony is not at all convincing that defendant had any conversation with the mother of the plaintiffs with reference to his purchase at the tax sale. He says that he had; but he does not repeat anything said to him by his sister, Mrs. Williams. He simply says, “They considered the land to be worth nothing, and would not pay the taxes on it for it, as they considered it worthless,” but he does not undertake to say who they were; and at another time he testifies that he was living in Texas for four or five years from 1890, which includes the date of the first tax sale in 1893, while Mrs. Williams lived in Louisiana. Then again he says that his sister, Mrs. Williams, was dead before he bought this property.
Had defendant proved with certainty that Mrs. Williams, the mother of plaintiffs, had acquiesced in the purchases at tax sales made by the defendant, the court might eoihe to a different conclusion as to the effect of the tax titles held by him, and as to the present ownership of the property.
Defendant urges an additional defense to the claim of plaintiffs for ownership in the J. C. Harrell tract in section 12, and the N. E. % of the N. E. % of section 11. He alleges that the heirs of J. C. Harrell conveyed those tracts to L. E. Hartzo August 18, 1885, and that he, defendant, purchased the interest of L. E. Hartzo at a tax sale July 23, 1893. He offers the three several acts of sale in evidence. The first act, of date August 18, 1885, from R. H. Harrell and others to L. E. Hartzo, does not mention Mrs. Lillie D. Williams, the mother of plaintiffs, and she did not sign the act. She did not therein part with her interest in the property, and she therefore remained the owner of her interest. It never passed to L. E. Hartzo from her. And, when the property was subsequently assessed and sold in the name only of L. E. Hartzo to this defendant, the interest of Mrs. Williams was not assessed, or attempted to be sold by the tax collector; and, of course, defendant did not acquire the interest of Mrs. Williams at the sale of Hartzo’s property for the nonpayment of taxes due by Hartzo. Defendant acquired whatever title L. E. Hartzo had in the property. He thus became co-owner with Mrs. Williams of said property. And, when Hartzo sold to defendant by private sale, July 20,1893, he sold only the interest which he may have acquired from certain of the heirs of J. C. Harrell.
In the act of sale from R. H. Harrell and others to Hartzo, of date August 18, .1885, the name of B. R. Williams, the father of plaintiffs, is mentioned as a vendor, and he appears to have signed the act. He does not there represent himself as the agent of his wife, Mrs. Lillie D. Williams; nor does he *8 attempt in the act to Sell the property of his wife.
But defendant argues that, because the plaintiffs are the heirs of B. R. Williams, they are estopped by his act from claiming their interest in their mother’s succession.
The record does not disclose what the succession of B. R. Williams consisted of, whether his heirs received anything from him, whether plaintiffs were all minors or not at the time of their father’s death, or, if any were majors, whether they accepted his succession with the benefit of inventory or not. Until these conditions are established, the plea of estoppel cannot be disposed of.
[4] Aside from this, plaintiffs offered evidence to prove that the act of sale, declared upon by defendant in his answer, from the heirs of Harrell to Hartzo was a simulation; but, on objection being made to the evidence, it was not admitted. The ruling was made in error. In all cases the dissolution of a contract may be demanded by suit or by exception. O. C. art. 2047; O. P. art. 20. Defendant set up this act of sale as a defense, and plaintiffs had no way of attacking it before trial, as they could not have filed a replication or rejoinder to defendant’s1 answer. The evidence should have been admitted. The case will be remanded as to this property.
The Alman tract, in section 34, will now be considered.
The origin of the title to this tract of land is stated by plaintiffs and admitted by defendant to be a sheriff’s deed to the heirs of Mr. and Mrs. J. O. Harrell, of date May 5, 1S77, at a time when their mother, Mrs. Williams, and the defendant, were minors.
It appears from the evidence that the grandriiother, Mrs. Frances R. Harrell, was mafried twice, and that there were two children of the first marriage, namely, J. C. Meyer and Mrs. E. R. Stoddard, wife of W. J. Stoddard, both of whom were minors and were represented by W. J. Stoddard as tutor. He made claim to a portion of the succession of Mrs. Frances R. Harrell on behalf of his1 wards. These parties on the one part and the “heirs of J. 0. and Frances R. Harrell” of the other part entered into an “article of agreement,” by which the Alman place was to be the property of the minors J. O. Meyer and Mrs. E. R. Stoddard. Other stipulations are contained in the agreement, which were to be carried out “in proper form at the earliest convenience.” This agreement is a private act, without date; and the original appears to have been lost. The copy filed in the record is not clearly proved to be a true copy. The names of the heirs of J. O. "and Frances R. Harrell are not named in the body of the act, and only two of said heirs signed the document; Mrs. Williams and the defendant not being either of them. They may have been minors at the time. R. H. Harrell, one of the heirs, is described as “the acting administrator of the estate of J. O. Harrell,” and he signs “It. I-I. Harrell, Administrator.” But the deceased; J. 0. Harrell, appears never to have been the owner of the Alman tract. It was acquired by his heirs at public sale after his death, and the administrator of his succession had no control over it, and he could not transfer title to the property owned by the heirs, the minors, to “J. C. Meyer and his sister, Mrs. E. R. Stoddard.” There were witnesses to this agreement, but they are both dead. But R. H. Harrell, who signed as administrator of his father’s succession, testifies that he saw these witnesses sign their names to the original act; and that he signed, together with the other parties, at the time. But no one testifies to the contents of the lost agreement.
At best, it is only an agreement to do something in the future, which' has not been done.
It appears that the parties to this agreement undertook to settle the claims of these two heirs of Mrs. Harrell in her succession *10 out of court; and without authority on any one’s part to represent the minor Harrells, who were the owners of the Alman tract.
Defendant, though he may have been a minor at the time, must have known all of these facts contained in plaintiffs’ petition. He, together with his coheirs, were the owners of this property at one time. He knew that he had not parted with the title to that property, and that the claims of any one else thereto were unfounded.
The tax title which defendant files and under which he claims title to this Alman tract results from a sale of the property in question, “assessed to W. J. Stoddard, for the year 1884,” and defendant has failed to offer any evidence to show that W. J. Stoddard had title to the property. We have seen by the agreement that the property was to be transferred to the minors J. C. Meyer and Mrs. E. R. Stoddard, wife of W. J. Stoddard; but there is no evidence going to show that they transferred their property to W. T. Stoddard. The assessment of the property of the former in the name of the latter is not a proper assessment; and a sale under that assessment is null and void. The act of sale is indefinite as to description. It simply reads: “Two-hundred and forty acres of land in township twenty-one, range sixteen, bought by J. C. Howells.” The number of the section is not given, and it would be impossible to locate the land with such meager descriptions. Again, it is said that the property had been bought from J. C. Howells, when no such person had ever owned it. If J. C. Harrell was intended by the name “J. G. Howells,” the existing conditions would not be improved, for the reason that J. C. Harrell was not the owner of the property at any time. He was dead at the time that the property was bought by his heirs. It was admitted on the trial that W. J. Stoddard never owned the property in section 34. The assessment of the property of defendant and his coheirs in the name of J. O. Howells .or J. 0. Harrell does not bind the owners. The subsequent tax sales and conventional sales by tax purchasers of the property to defendant only pretend to transfer “such title as he had acquired.” This provision is inserted in deeds made by tax purchasers. These tax purchasers could not transfer more than they had acquired, and as they had not acquired the interest of these plaintiffs, or that of their mother, in the property, they did not transfer that interest to this defendant. The latter only purchased that which could have been transferred, that which belonged to the transferror, and that did not embrace the property of plaintiffs. The defendant therefore is co-owner with these plaintiffs in this tract of land also; and they owe to one another an accounting for the rent, revenues, and expenses upon the whole property.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed.
It is further ordered, adjudged, and decreed that the plaintiffs L. 0. Williams, Mittie Williams, Earl Williams, and Mrs. Ruth Well, born Williams, now the wife of Charles Well, be recognized as owners in indivisions with the defendant of the following described property, situated in the parish of Caddo, in the proportion of four-thirtieths in full ownership in plaintiffs:
The N. E. % of the S. E. % of section 12, and the N. W. % of the N. E. % of section 11, all in township 21, range 16, and
The S. W. %, and the S. E. 14 of the N. E. %, and the S'. W. % of the N. E. all in section 34, township 22, range 16, or as described in the sheriff’s deed of date May 5, 1877, as:
“The southwest quarter of section thirty-four, township twenty-two, range sixteen; the southeast quarter of the northwest quarter, and the southwest quarter of the northeast quarter of section thirty-four, township twenty-two, range *12 sixteen; containing two hundred and forty and 27/ioo'aeres in the parish of Oaddo, state oí Louisiana.”
It is further ordered, adjudged, and decreed that the right is reserved to all parties to the suit to claim a settlement of the rents, revenues, and expenses of the property involved. Costs to be paid by defendant.
It is further orderéd that this case be remanded to the district court for the purpose of trial, and determining the title to the N. y2 of section 12, and the N. E. % of the N. E. % of section 11, all in township 21, range 16; referring to the property said to have been sold to L. P. Hartzo August 18, 1885.