142 So. 138

**HARRELL et al. v. HARRELL et al.**
No. 31030.

Supreme Court of Louisiana.
March 30, 1932.

See, also, 173 La. 416, 137 So. 199.

John B. Files and Foster, Hall, Barret & Smith, all of Shreveport, for appellants.

Herold, Cousin & Herold, of Shreveport, for appellee Mrs. S. Price Harrell.

Murff & Perkins, of Shreveport, for appellees Mrs. Winters, Mrs. Tyson, A. J. Murff, and J. M. Daniels.

LAND, J.

Fifty years ago J. C. Harrell and his wife, Mrs. Frances Harrell, formerly the Widow Meyer, died possessed of some real estate in the northern portion of Caddo parish, and were survived by the following named children and heirs at law:

(1) Robert H. Harrell, who died in March, 1929;

(2) Mrs. Parthena Hartzo, who died 30 years ago, survived by one son, Dr. J. D. Hartzo;

(3) Joe Harrell, who died 8 years ago;

(4) Mrs. Alice Burkes;

(5) Mrs. Lillie Williams, who died 36 years ago; and

(6) S. Price Harrell, who died in June, 1927.

Mrs. Frances Harrell, formerly the Widow Meyer, was survived by two children, issue of her previous marriage, viz. Tobe Meyer and Mrs. E. R. Stoddard, wife of W. J. Stoddard.

The real estate left by decedents consists of S. W. ¼ and S. E. ¼ of N. W. ¼, and S. W. ¼ of N. E. ¼ of section 34, T. 22, R. 16, containing 240 acres, and sometimes referred to as the "Alman Place"; and N. E. ¼ of S. E. ¼ and N. ½ of section 12; and N. W. ¼ of N. E. ¼ and N. E. ¼ of N. E. ¼ of section 11, T. 21, range 16.

In 1879, after the deaths of J. C. and Frances Harrell, an informal partition was executed between the Harrell children on the one side and the Meyer children on the other. The property in section 34, or the "Alman Place," was allotted to the Meyer children in the settlement of their interest in their mother's estate, and the Harrell children received the other properties in sections 11 and 12.

Subsequently, the "Alman Place" in section 34 was assessed to W. J. Stoddard, husband of one of the Meyer children, and was sold in 1886 to G. W. Huckaby for nonpayment of taxes of 1884. (Sup. Tr. 118.)

In 1892 the N. ½ of section 12, and N. E. ¼ of N. E. ¼ and S. W. ¼ of section 11, assessed to L. F. Hartzo, in whose name title had been placed by the Harrell heirs, were sold to S. Price Harrell for delinquent taxes of 1890 and 1891. (Sup. Tr. 77.)

In 1896 the N. W. ¼ of N. E. ¼ of section 11, assessed to the succession of Mrs. F. B. Harrell, was adjudicated to S. Price Harrell for unpaid taxes of 1895. (Sup. Tr. 75.)

The Alman tract, adjudicated to G. W. Huckaby in 1886, passed by mesne conveyances to J. Dixon and J. McAneny, one of the links being a second tax sale of date August 19, 1890, under an assessment to Mrs. E. R. Stoddard, one of the Meyer children. (Sup. Tr. 109.)

By 1900 S. Price Harrell had acquired, by mesne conveyance from the tax purchaser, the "Alman Place," and by tax sales the other tracts mentioned above, or all of the lands involved in this litigation. (Sup. Tr., pp. 48–75, 79–111.)

Mrs. Lillie Williams was the fifth child of J. C. Harrell and his wife, Mrs. Frances Harrell, and died in 1894, leaving five minor children.

In 1911, after becoming of age, these children filed suit against their uncle, S. Price Harrell, and recovered a one-sixth interest in the property. Williams v. Harrell, 132 La. 1, 60 So. 699.

On July 23, 1914, after the judgment in Williams v. Harrell, a partition was effected between S. Price Harrell and the Williams heirs, the latter receiving three 40-acre tracts and relinquishing to S. Price Harrell their rights in the other property. (Sup. Tr. 66.)

In 1925, S. Price Harrell sold the "Home Place," the N. ½ of section 12, to his brother, Robert H. Harrell, partly for cash and partly on credit, and the property was adjudicated January 7, 1928, in foreclosure proceedings to J. A. Thigpen for the price of $5,000. (Sup. Tr. pp. 33–47.)

After the death of S. Price Harrell in June, 1927, his surviving widow, Mrs. Ida M. Harrell, qualified as administratrix of his estate.

The mortgagee foreclosed his special mortgage in the sum of $23,654.65 on the remaining property involved in this suit, and on November 23, 1927, the property was adjudicated to J. A. Thigpen for $20,000; the sum of $17,643.81 being retained by the adjudicatee to pay prior special privileges and mortgages resting on this and other property of the succession of S. Price Harrell. (Sup. Tr. 30.)

On January 26, 1928, J. A. Thigpen sold to Mrs. Ida M. Harrell, widow of S. Price Harrell, all of the property he had purchased at those foreclosure sales, reserving the mineral rights, for the sum of $72,860, in ten notes payable on January 1, 1928, and annually thereafter, J. A. Thigpen specially agreeing to pay prior privileges and mortgages resting on the property in the sum of $17,643.81. Of these ten notes only two have become due and exigible. (Sup. Tr. 15.)

The present suit was filed by the heirs of Joe Harrell May 8, 1929, in order to effect a partition, plaintiffs claiming an undivided one-sixth interest in the property.

Later on J. D. Hartzo, Mrs. Alice Burkes, and the heirs of Robert H. Harrell joined with plaintiffs, the heirs of Robert · H. Harrell claiming an undivided one-sixth interest between them, and J. D. Hartzo and Mrs. Alice Burkes claiming an undivided one-sixth interest each in the property. (Sup. Tr. 45.)

All of the children of J. C. Harrell are parties to the suit, either in their own right or through successors in title, but the two Meyer children, heirs of Mrs. Frances Harrell are not parties.

The judgment of the lower court rejected plaintiffs' demands and recognized defendants in possession to be the owners of the respective tracts claimed by them. (Tr. 69.)

Plaintiffs appealed.

The defendant, Mrs. S. Price Harrell, was decreed to be the owner of all the property involved in the suit, except N. E. ¼ of S. E. ¼ of section 12, N. W. ¼ of S. W. ¼ of section 34, and west 33⅓ acres of N. W. ¼ of N. E. ¼ of section 11, which was decreed to belong to the defendants Ruth Winters, Nadie Williams Tyson, and A. J. Murff, and except 17.60 acres of N. W. ¼ of S. W. ¼ of section 34, which was decreed to belong to Julius Malcolm Daniels.

1. Plaintiffs contend that the decree in the case of Williams v. Harrell, 132 La. 1, 60 So. 699, is decisive of the claims of title re-urged herein by those claiming under S. Price Harrell; that the Supreme Court in that case recognized, against S. Price Harrell, the heirs of Mrs. Lillie Williams as owners of an undivided interest in the same property involved herein; and that plaintiffs in the present case

occupy the same relation to a recognition of their interests in the property as did the heirs of Mrs. Lillie Williams in the previous case.

Defendants have pleaded 3 years' prescription in aid of the tax titles of S. Price Harrell upon which they rely, estoppel, and 10 and 30 years' prescription.

Whatever validity the claims of the present plaintiffs might have had in 1911, when the case of Williams v. Harrell was decided, it must be remembered that the tax sales to S. Price Harrell, upon which defendants rely, are respectively 46, 44, 40, and 37 years old, and plaintiffs, who were not parties to the Williams suit, have not attacked in the petition filed in this case any of these tax sales in any particular.

It may be true that these same tax sales were declared null and void in the Williams suit for want of proper assessment; but plaintiffs are confronted in the present suit by defendants' pleas of 3 years' prescription, all of these defendants being third parties to the co-owners of the property herein involved, and in possession of the same.

In support of their pleas of 3 years' prescription, defendants rely upon the following authorities: "Defendants in actual possession of property under a tax title were not called upon to make explanations in the absence of an actual attack upon the tax proceedings. Defendants under such circumstances were justified in relying upon the presumption of regularity. Plaintiff, under existing circumstances, should have raised a direct issue by pleadings as to the illegality of the assessment and the tax sale." Gouaux v. Beaullieu, 123 La. 684, syllabus 1 and 2, 49 So. 285.

These plaintiffs have stood by for years, silent and inactive, while S. Price Harrell was in the possession of all of this property under recorded tax titles, and under mesne conveyance from a tax purchaser in one instance, and have permitted him to receive revenues from and to sell and mortgage the property, until all of it has found its way into the hands of third persons.

It is well settled that: "The presumption 'omnia rite' applies to tax sales after parties have slept on their rights for many years. Corkran Oil & Development Co. v. Arnaudet, 111 La. 563, 35 So. 747; Willis v. Ruddock Cypress Co., 108 La. 255, 32 So. 386; Heirs of Woodfolk v. Witkowski, 120 La. 496, 45 So. 401."

It is said in Griffing v. Taft, 151 La. 442, 447, 91 So. 832, 834: "Moreover, it is immaterial (for the purposes of prescription under article 233 of the Constitution of 1898) whether the assessment has been made in the name of one person, or another, or in no name, or whether the owner, not in possession, has been notified, or whether the sale has been advertised or has not been advertised"—citing numerous authorities.

It is therefore immaterial, in so far as the prescription of 3 years relative to tax suits, under the Constitutions of 1898, art. 233, and 1921, art. 10, § 11, is concerned, whether the sale of August 18, 1885, by the heirs of J. C. Harrell to L. F. Hartzo of the N. ½ of section 12 and the N. E. ¼ of the N. E. ¼ of section 11 was simulated or whether it was not; since there was an actual assessment to L. F. Hartzo, the apparent record owner, and it is unimportant whether or not the assessment was made in the name of the true owner, in passing upon the prescription

of 3 years, pleaded by defendants in aid of the tax title acquired by S. Price Harrell under this assessment in the year 1892.

The 3-year prescription relied upon by defendants in possession is manifestly well founded, and must be sustained.

2. However, plaintiffs contend that, as S. Price Harrell was a co-owner with them, the purchases made by him at tax sale inured to the benefit of his co-owners and operated merely as a payment of taxes on the property.

This contention is met by pleas of estoppel on the part of defendants in possession, founded upon the laches and the long acquiescence of the plaintiffs, and upon the fact that all of the property in this case has passed into the hands of third persons.

The tax sales to S. Price Harrell, under which defendants in possession claim, are 46, 44, 40, and 37 years old respectively. Plaintiffs were in the neighborhood where the land was situated, and knew that the same had been sold and resold. They paid no taxes on the property. They made no attempt to redeem it, and the first and only effort made by plaintiffs to recover the property is by the present suit, filed in the year 1929.

In Cooper v. Edwards, 152 La. 23, 92 So. 721, it is said: "The right of a co-owner of land sold for taxes to another co-owner to be reinvested with title upon payment of his share of the selling price and subsequent taxes rests on equitable considerations, and should be exercised within a reasonable time.

"Where a co-owner of land purchases it at a tax sale, another co-owner allowing the tax title to remain on the record assumes the risk that an innocent third party may buy the property from the holder of the tax title.

"Where a tenant in common buying the land at tax sale sold it to a third party, the third party's title was protected by the prescription of three years, under Const. 1898, art. 233, relative to suits affecting tax titles.

"The question of good or bad faith, founded upon ignorance or knowledge of facts not disclosed by the public records, has nothing to do with the plea of prescription of three years in favor of tax titles under Const. 1898, art. 233." (Syllabi.)

In Duson v. Roos, 123 La. 835, 844, 49 So. 590, 593, 131 Am. St. Rep. 375, the court said: "After property has been sold at tax sale, however, the former owners of it cannot be compelled to redeem or reacquire it. Hence it is optional with them to take advantage or not of this doctrine by which a title acquired by any one of the co-owners from the purchaser at the tax sale inures to the benefit of the other co-owners. These other co-owners have a right to require their co-owner to make them title in the proportion of their former co-ownership; but this right is not founded upon any codal provision, but on mere equitable considerations, and, such being the case, must be exercised within a reasonable time or it will be lost. These other co-owners cannot sleep upon this right, await developments, to see whether the property will grow in value or not, and then exercise the rights or not, according to the event. He who seeks equity must do equity. In the recent case of Joffrion v. Gumbel, 123 La. 391, 48 So. 1007, this court refused to enforce a promise of sale which had thus been slept on too long."

An interval of 15 years had elapsed in the above case, and this was held to have been

too long for the co-owners to exercise the right here sought by plaintiffs.

Not only have more than 37 years elapsed in the present case since the tax sales to S. Price Harrell, under which defendants claim, but the record shows that conditions have materially changed, and that the lands in dispute have become valuable for oil and gas, while at the time of the tax sales they were not worth the taxes assessed against them. (Tr. 100.)

In support of the above decisions, see, also, Gulf Ref. Co. v. Hart, 130 La. 51, at top of page 65, 57 So. 581; Doiron v. Lock, Moore & Co., 165 La. 58, 65, 115 So. 366; Ramsey v. Frost-Johnson Lumber Co., 168 La. 657, 661, 123 So. 114.

Our conclusion is that it is too late for the plaintiffs to invoke the equitable doctrine of co-ownership, because of the great length of time which has elapsed since the tax sales, and the change which has taken place in the value of the property in dispute, and also for the reason that the property has passed into the hands of third parties, not co-owners.

The plea of estoppel is therefore sustained.

We do not find it necessary to pass upon the prescriptions of 10 and 30 years, or other pleas tendered by defendants.

3. As the supplemental transcript contains copies of instruments offered in evidence in the original in the lower court, and therefore not actually filed, and as these instruments were considered by the trial judge in reaching his decision, and as the controversy as to who should pay for them has been terminated by defendants paying for same and filing them in the record, which is now complete, the Supreme Court will con-

sider on the merits these documents, which are now before us. Under the circumstances, defendants ought not to be deprived of their evidence and placed at the mercy of their opponents.

Judgment affirmed.