198 So. 661

**SKANNAL v. HESPETH et al.**

No. 35534.

April 1, 1940.

On Rehearing Nov. 4, 1940.

Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, for A. C. Skannal, Jr., Nannie L. Skannal, and Union Producing Co.

Chandler & Chandler and H. M. Holder, all of Shreveport, for Mollie R. Bell and others.

ROGERS, Justice.

This was originally an action for slander of title which was converted into a petitory action. The property involved is a tract of land in the Sligo oil and gas field in Bossier Parish, Louisiana, described as the N½ of the NW¼, the SE¼ of NW¼ and SW¼ of the NE¼ of Section 30, Township 17 North, Range 11 West.

Plaintiff, after alleging his ownership and possession of the property, further alleged that the numerous defendants were claiming to own the property or an interest therein and had placed of record in the clerk's office of Bossier Parish a number of instruments asserting their claim. Two of the defendants answered, disclaiming any interest in the property. The remaining defendants answered, asserting title to an undivided two-thirds interest in the property and they impleaded as parties defendant in the converted action Nannie L. Skannal at whose instance the property was adjudicated at public sale to the plaintiff, A. C. Skannal, Jr., to satisfy a mortgage indebtedness, and the Union Producing Company the holder of a mineral lease covering the property, which lease was granted by A. C. Skannal, Jr.

Title to the property involved was acquired by Phillip Bines under a patent issued by the United States Government on November 9, 1891. On June 16, 1923, the property was sold at tax sale for unpaid taxes of the year 1922, under an assessment in the name of the heirs of Phillip Bines, and was purchased by A. W. Prince. On December 8, 1924, Prince obtained a monition judgment for the purpose of curing informalities in the tax sale. On June 27, 1925, Prince conveyed the property to Zack Moore. The widow and heirs of Moore were sent into possession of the property by judgment rendered on November 27, 1927, by the Twenty-Sixth Judicial District Court, Bossier Parish. Shortly after the rendition of the judgment, the widow and heirs of Zack Moore executed a mortgage on the property in favor of the Federal Land Bank of New Orleans. This mortgage was filed for record in Bossier Parish. Upon failure of the mortgagors to make certain payments required by the terms of the mortgage, the payments were made by Nannie L. Skannal, who was an interested party, and the Federal Land Bank subrogated to her its rights with respect to those payments. Nannie L. Skannal thereafter brought a foreclosure suit under the terms of the mortgage, and the property was sold at sheriff's sale to A. C. Skannal, Jr., on April 13, 1935.

Defendants in the original action and plaintiffs in the converted action contend that the tax sale, the monition judgment, and the act of transfer from Prince to Moore were null, and that if they were not null, the foreclosure proceeding was invalid; hence, plaintiffs in the converted action claim the ownership of two-thirds of an undivided one-half interest in the property by inheritance from Betsy Bines, the predeceased wife of Phillip Bines, unencumbered by the Land Bank mortgage, and, alternatively, the ownership of this interest subject to the mortgage.

The defendants in the petitory action, one of whom is plaintiff in the original suit, filed an answer denying the plaintiffs' claim in this action asserting the validity of the tax sale, the deed from Prince to Moore, and the sheriff's deed to A. C. Skannal, Jr. Defendants in the petitory action also filed a plea of prescription of ten years acquirendi causa, a plea of prescription of three years under section 11 of Article 10 of the Constitution of the State of Louisiana, and a plea of estoppel.

The case was tried on the issues thus presented and judgment was originally rendered by the judge of the district court, holding that any defects in the tax sale were cured by the prescription of three years, but further holding that the property was purchased at the tax sale by A. W. Prince for the benefit of Zack Moore and that Moore, as one of the co-owners, could not acquire plaintiffs' title to the property. The court also rejected the plea of estoppel and the plea of ten years' prescription. The defendants in the converted action filed a motion for a new trial and, at the same time, filed a plea of prescription of thirty years and an exception of no cause or right of action. Thereupon plaintiffs in the converted action filed pleas of ten-year and thirty-year prescription acquirendi causa and also a plea of estoppel.

Plaintiffs in the converted action concurred in the motion for a new trial and the case was re-opened by the judge of the district court. A new trial was had, and the judge on that trial held that in rendering his former judgment he erred in rejecting the plea of estoppel filed by the defendants in the converted action, and then further held that the plea was good, that the plaintiffs in the converted action were estopped by reason of their silence and inaction for such a long period of time and on account of the intervention of the rights of third parties and, therefore, were not entitled to recover any interest in the property. The judge of the district court accordingly rendered a judgment rejecting in their entirety the demands of plaintiffs in the converted action, and in favor

of the plaintiff in the original action, defendant in the converted action, A. C. Skannal, Jr., as the owner of the property, and the Union Producing Company, as the owner of the mineral lease covering the property. From this judgment, defendants in the original action, plaintiffs in the converted action, have appealed.

Defendants in the original action, plaintiffs in the petitory action, assail the tax sale to A. W. Prince on the grounds that it was made under an illegal assessment and that no notice of tax delinquency was given to plaintiffs or their ancestors in title. Such defects, however, are not radical in their nature, and if they existed at all, they were cured by the prescription established by Section 11 of Article 10 of the Constitution of 1921, which fixes the period within which an action to annul a tax sale may be instituted. This period was three years at the time the tax sale in this case was executed. The prescription established by the Constitution, however, does not run in favor of the tax purchaser as long as the tax debtor remains in physical possession of the property. This exception to the general rule of prescription laid down in the Constitution does not apply to this case, because, as the evidence satisfactorily shows, Prince took actual physical possession immediately after he had purchased the property at the tax sale. This was in the year 1923. Two years later, to-wit, on June 27, 1925, by authentic act, A. W. Prince sold the property to Zack Moore for a recited consideration of $1,000. Moore died in May, 1926, leaving a widow and two children who, by formal judgment rendered and

signed on November 17, 1927, by the judge of the Twenty-Sixth Judicial District Court, Parish of Bossier, were put in possession of his estate, including the tract of land which is the subject of this controversy. On December 7, 1927, the widow and heirs of Zack Moore mortgaged the property to the Federal Land Bank of New Orleans. This mortgage was foreclosed in the month of February, 1935, and at the foreclosure sale, which took place on April 13, 1935, the property was purchased by A. C. Skannal, Jr., the plaintiff in the original suit.

One of the contentions urged by the plaintiffs in the petitory action is that the consideration of $1,000 recited in the act of sale from Prince to Moore was not paid, and for that reason, plaintiffs prayed that the notarial act be declared null and of no effect and that the inscription thereof be ordered erased from the records of Bossier Parish. Another contention urged by plaintiff in the petitory action is that regardless of the validity of the act of sale from Prince to Moore, since at the time the tax sale was executed, Moore and the plaintiffs in the petitory action were co-owners of the property, the possession of Moore resulting from his purchase of the property from Prince, inured to plaintiffs as such co-owners; that, as a consequence, prescription ceased to run against plaintiffs, because prescription ceased to run against Moore, their co-owner, when he acquired the property from Prince. It is clear that whether the consideration recited in the act of sale from Prince to Moore was or was not paid, that fact can not affect the rights of the Federal Land Bank and A. C. Skannal, Jr., the plaintiff, if they acted in good faith in dealing with the property.

The record shows that the Federal Land Bank acquired a mortgage covering the property from the widow and heirs of Zack Moore. The act of mortgage was executed on December 7, 1927, and was filed for record in Bossier Parish on December 9, 1927. At the time the Federal Land Bank acquired its mortgage, the only transactions of record affecting title to the property were the patent to Phillip Bines from the United States Government; the tax sale in the name of the heirs of Phillip Bines to A. W. Prince; the monition proceeding in which judgment was rendered confirming the title of Prince to the property; a sale importing a valid consideration from Prince to Zack Moore; and a judgment in the Succession of Moore, recognizing his widow and heirs and sending them into possession of the property. The Federal Land Bank acquired its mortgage more than three years after the date of the tax sale to A. W. Prince. The taxes on the property had not been paid by any one prior to the tax sale. Before acquiring the mortgage, the Federal Land Bank had the title to the property examined by its attorney, a member of the Bar of the City of Shreveport, who rendered a written opinion to the bank approving the title to the property as being vested in the mortgagors, the widow and heirs of Zack Moore.

Since good faith is always presumed and since there is nothing in the

record to indicate any knowledge by the Federal Land Bank at the time it acquired its mortgage that the plaintiffs in the petitory action, or their ancestors had, or were asserting, any claim to the property, the Federal Land Bank must be held to have acted in good faith and entitled to the protection afforded to a person who, in good faith, deals with property on the face of the public records.

The case of Bell v. Canal Bank & Trust Company, 193 La. 142, 190 So. 359, involved the identical question which is involved in this case. There, as here, the rights of a mortgagee were involved. There, as here, it was contended, although not proved or legally established, that the plaintiffs had remained in physical possession of the property after its sale for delinquent taxes. In disposing of the question, this court held in the Bell case that, under the law of registry, a purchaser of real estate, in good faith, from the owner of record and without notice can not be affected by secret equities and rights which may have existed in favor of former owners of the property dehors the public records. Since the Federal Land Bank, as a third party relying upon the public records is protected against any equities or rights of plaintiffs not appearing on the records, A. C. Skannal, Jr., the innocent purchaser of the property at the foreclosure sale held to enforce the mortgage of the Federal Land Bank, is likewise protected against plaintiffs' claim.

The judge of the district court held that the plea of estoppel filed by the defendants in the petitory action was well-founded, and he accordingly rendered judgment rejecting the claim of the plaintiffs in the petitory action. We think the holding and judgment are correct.

The plea of estoppel alleges that Martha Hespeth and the other plaintiffs in the petitory action, "having allowed the property involved herein to be sold for taxes in the year 1923, and having allowed said tax purchaser and his vendees to remain in possession of said property for a period of fifteen (15) years without in any manner disturbing said possession, and said property having become valuable for oil and gas purposes long after the date of said tax sale, said value being far greater than the value of said property at the time of said tax sale, are estopped at this time to question the title of the said A. C. Skannal, Jr., or the title of any of those holding under him," and the estoppel was specially pleaded as a bar to the recovery of any interest in the property by the plaintiffs in the petitory action.

An examination of the jurisprudence discloses that similar pleas have been maintained in a number of cases. Our courts have held that a person allowing his property to be acquired at tax sale by one of his co-owners, has a reasonable time within which to pay the tax purchaser the proportionate part of the taxes due by him and to secure a redemption of his interest in the property, even though the regular period for redemption has expired. But our courts also have held that when the tax debtor has waited an unreasonable length of time within which to claim any rights with respect to the property and

the rights of third persons have intervened, he is estopped to claim such rights. These propositions of law are fully stated in the cases of Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am.St.Rep. 375, and Cooper v. Edwards, 152 La. 23, 92 So. 721. In the Duson case [123 La. 835, 49 So. 593, 131 Am.St.Rep. 375], the court said:

"After property has been sold at tax sale, however, the former owners of it cannot be compelled to redeem or reacquire it. Hence it is optional with them to take advantage or not of this doctrine by which a title acquired by any one of the co-owners from the purchaser at the tax sale inures to the benefit of the other co-owners. These other co-owners have a right to require their co-owner to make them title in the proportion of their former co-ownership; but this right is not founded upon any codal provision, but on mere equitable considerations, and, such being the case, must be exercised within a reasonable time or it will be lost. These other co-owners cannot sleep upon this right, await developments, to see whether the property will grow in value or not, and then exercise the rights or not, according to the event. He who seeks equity must do equity."

In that case, just as in this case, a period of fifteen years elapsed between the date of the tax sale and the date of the suit brought to set it aside.

In the Cooper case the court stated the law to be as follows [152 La. 23, 92 So. 722]:

"Our opinion is that the plea of prescription of three years, under article 233 of the Constitution of 1898 and of the Constitution of 1913 (retained as section 11 of article 10 of the Constitution of 1921), was and is a sufficient defense to this suit. When property is sold to one of its joint owners for delinqeunt taxes, the transaction may be regarded, as far as the co-owners are concerned, as a payment of the taxes, not as a transfer of an indefeasible title. Hake v. Lee & Beall, 106 La. 482, 31 So. 54; Bossier v. Herwig, 112 La. 539, 36 So. 557. Each co-owner, even after the expiration of the year that is allowed for any previous owner to redeem a title that has been divested by a tax sale, may be reinvested with the title for his original interest in the property, by paying his share of the price of the adjudication and of all taxes paid subsequently by the co-owner holding the tax title. But that right is not founded upon statute law; it is a result of equitable considerations, and should be exercised within a reasonable time. A tenant in common, whose property has been sold to a co-tenant for delinquent taxes, is not allowed indefinitely to await developments and speculate upon the value of the property, in comparison with the cost of redeeming it. Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am.St.Rep. 375. As long as the original co-owner, under such circumstances, allows the tax title to remain on record, he assumes the risk that an innocent third party may buy the property from the holder of the tax title. Harris v. Natalbany Lumber Co., 119 La. 978, 44 So. 806; Vestal v. Producers' Oil Co., 135 La. 984, 66 So. 334. In each of those cases, it was decided that a third party, buy-

ing property from one who, being already the owner of an undivided interest in it, had bought the property for taxes assessed in the name of all of the co-owners, was protected by the prescription of three years."

The legal principles set forth in the cited cases have been approved by this court in the very recent cases of Harrell v. Harrell, 174 La. 957, 142 So. 138, and Tyson v. York, 192 La. 373, 188 So. 33.

As a result of the law laid down in the above-mentioned decisions of this court, the moment the Federal Land Bank acquired its mortgage on the property in dispute from the widow and heirs of Zack Moore, who were in possession of the property, and at a time when the constitutional prescription of three years had run, the rights of the plaintiffs in the petitory action as co-owners of Zack Moore, if any they ever had, lapsed entirely as far as the Federal Land Bank and A. C. Skannal, Jr., are concerned, as they were innocent third persons whose rights had intervened.

But plaintiffs in the petitory action contend that in all the cases involving the estoppel which is pleaded by defendants in the action, the third parties had the benefit of the three years' prescription established by the Constitution. We do not find this contention to be correct.

In the case of Harrell v. Harrell, supra, the right of third persons did not intervene until November 23, 1927, when a portion of the property in dispute was acquired at a foreclosure sale by J. A. Thigpen, one of the defendants. The foreclosure sale was brought against the surviving widow of S.

Price Harrell, the original taxpayer. The suit, as shown by the opinion of the court, was filed during the year 1929, nevertheless, this court stated [174 La. 957, 142 So. 141]:

"The 3-year prescription relied upon by defendants in possession is manifestly well founded, and must be sustained."

The court further said:

"Our conclusion is that it is too late for the plaintiffs to invoke the equitable doctrine of co-ownership, because of the great length of time which has elapsed since the tax sales, and the change which has taken place in the value of the property in dispute, and also for the reason that the property has passed into the hands of third parties, not co-owners."

"The plea of estoppel is therefore sustained."

The contention being made by plaintiffs in this case, to the effect that the possession by one of the alleged co-owners suspended the prescription running against this tax sale, was disposed of by this court in Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366, 369, as follows:

"The supplementary contention of plaintiffs that the possession of the tax purchaser was the possession of all the co-owners, suspending prescription, and that its purchase inured to the benefit of all the co-owners, was correctly disposed of by the district judge as follows, viz.:

"'As to the interruption of prescription by possession for all, it will cease, of course, when the possession by the tax purchaser for himself is held to have begun under the

tax deed; and that begins when, if ever, the co-owner loses the right to redeem his title.

" 'There is no statutory law prohibiting the purchase of an undivided interest in land by a co-owner at tax sale; but if he does purchase, equity holds that the tax deed inures to the benefit of his co-owners, at their option. They may or may not exercise their option by paying their portion of the tax and demanding a reconveyance; and if they fail to do so within a reasonable time, the tax purchaser may rely upon their acquiescence and hold the title as his individual property.' "

In Bell v. Canal Bank & Trust Company, 193 La. 142, 190 So. 359, the salient facts were, that the property in dispute was sold for taxes in the year 1913, under an irregular assessment. In 1926, the sole heir of the tax purchaser obtained a judgment confirming the tax title. The judgment was duly recorded. On April 16, 1927, the heir of the tax purchaser executed a mortgage in favor of the Prudential Life Insurance Company. In 1937, the heirs of Manuel Bell, Sr., the tax debtor, obtained a judgment against the heir of the tax purchaser, decreeing that the tax sale and the judgment of confirmation thereof were null, on the ground that the tax purchaser, the holder of a mortgage on an undivided interest in the property, had perpetrated a fraud on the tax debtor, a co-owner with his mortgagor. In the meantime, the Canal Bank and Trust Company, which had acquired the mortgage granted to the Prudential Life Insurance Company, foreclosed the mortgage and bought in the property at the sheriff's sale. The purpose of the suit was to recover the property from the bank. This court held that although the mortgagee of a tract of land, through fraud perpetrated on the co-owner with his mortgagor, obtained a tax title to the entire mortgaged tract, the fact that the defrauded co-owner's heirs remained in possession of a portion of the mortgaged property was not sufficient to affect the rights of one subsequently obtaining a mortgage from the defrauding owner, where the equities and rights of the heirs of the defrauded owner were not matters of record. The court also held that the transferee of a mortgage is entitled to the same rights as the transferrer.

In this case, A. W. Prince, the tax purchaser and his vendee, Zack Moore, were in possession of the property for more than three years after the one-year period for redemption had expired and prior to the time the Federal Land Bank acquired its mortgage.

As we have reached the conclusion that the judgment of the district court sustaining the plea of estoppel filed by the defendants in the petitory action, one of whom, A. C. Skannal, Jr., is the plaintiff in the original action, is correct, it is not necessary to pass on the other pleas and issues tendered by the parties litigant.

For the reasons assigned, the judgment appealed from is affirmed.

On Rehearing.

ODOM, Justice.

On original hearing we sustained the plea of estoppel filed by A. C. Skannal,

Jr., the defendant in the converted (petitory) action, and dismissed the suit of plaintiffs in the converted action. We said:

"As a result of the law laid down in the above mentioned decisions of this court, the moment the Federal Land Bank acquired its mortgage on the property in dispute from the widow and heirs of Zack Moore, who were in possession of the property, and at a time when the constitutional prescription of three years had run, the rights of the plaintiffs in the petitory action as co-owners of Zack Moore, if any they ever had, lapsed entirely as far as the Federal Land Bank and A. C. Skannal, Jr., are concerned, as they were innocent third persons whose rights had intervened."

On application for rehearing, counsel for appellants (plaintiffs in the converted action) stressed the point that they had attacked in their pleadings the foreclosure proceedings and the sale at which A. C. Skannal, Jr., acquired the property, and that they had in oral argument and in briefs urged the point that Skannal, the defendant in the converted action, acquired no title to the land because the foreclosure proceedings were null, and, since he had acquired no title, he was without interest or standing in court to urge the plea of estoppel which we sustained.

We therefore granted a rehearing for the sole purpose of considering the foreclosure proceedings in order that we might decide what rights, if any, A. C. Skannal, Jr., acquired at the sale.

Plaintiffs in the petitory action attacked the foreclosure proceedings on four grounds:

(1) That the notes and copy of the mortgage were not attached to the petition for executory process.

(2) That the foreclosure proceeding was brought by Miss Nannie Skannal on two notes of the series due the Federal Land Bank, which notes had been acquired by her from the bank with full subrogation of all the rights and interest of the bank, but that she did not allege that she had obtained the consent of the bank, the holder of the remaining notes of the series, to foreclose, as required by the mortgage.

(3) That the advertisement did not state that in case of sale the notes still held by the bank should be secured by first mortgage on the property, as required by the mortgage.

(4) That the property did not sell for an amount sufficient to pay the foreclosing creditor, with attorney's fees and costs, and the balance of the debt due the Federal Land Bank.

Counsel for A. C. Skannal, Jr., who bid in the property at the foreclosure sale, contend that these are all mere informalities which were cured by the prescription of two years, under Article 3543 of the Revised Civil Code, as amended by Act 231 of 1932, page 732, which prescription was pleaded.

This article of the Code, as amended, reads as follows:

"That any and all informalities of legal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, licensed auctioneer, or other persons, authorized by an

order of the courts of this State, to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were part owners at the time of making it, and in the event of such part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication thereof."

The property was sold at public auction, and Skannal bid it in on April 13, 1935. The slander suit was filed by A. C. Skannal, Jr., on February 10, 1938, and the answer of defendants, in which they denied that Skannal had title and set up title in themselves (thereby making themselves plaintiffs in the petitory action), was filed on March 1, 1938, more than two years after the date of the sale; so that, if the irregularities in the foreclosure proceedings complained of by plaintiffs in the petitory action are mere informalities, and if the prescription of two years is applicable to this particular case, then the attack on Skannal's title made by plaintiffs in the petitory action is barred.

■ Counsel for plaintiffs in the converted action practically concede in their brief, as they must, that the irregularities (1), (2), and (3) in the foreclosure proceedings complained of by them are mere informalities curable by the prescription of two years, under Article 3543 of the Code, as amended, and are cured if the provisions of that article of the Code are applicable to this case. But they argue that the two-year prescription under that article of the Code, as amended, has no application to this particular case, for the following reason:

Armelia Graham was one of the defendants in the slander suit and one of the plaintiffs in the petitory action. The interest she claimed to own in the land was acquired by inheritance from her mother, Cilla Brooks, who was a major at the time the sale was made. Cilla Brooks died on March 19, 1937, 24 days less than two years from the date on which the sale took place. Her daughter, Armelia Graham, who inherited her mother's interest, was a minor at the time of her mother's death. It is argued that prescription ceased to run the day the minor acquired her interest, because the general rule is that prescription does not run against minors.

Whether the two-year prescription pleaded by the defendant in the petitory action is applicable to this particular case depends upon whether prescription ceased to run when the minor became one of the co-owners of the property by inheritance 24 days before the end of the prescriptive period. Counsel argue that the minor's acquisition of an interest in the property interrupted the running of the prescription.

■ The wording of the Code, as amended, does not admit of such construction. The Code does not say that this prescription shall not run against minors. It says in terms too plain to be misunderstood that any and all informalities in legal procedure connected with, or growing out of, any sale at public auction of real or personal property, made by any person authorized by an order of court to sell at public auction, "shall be prescribed against by

those claiming under such sale after the lapse of two years from the time of making said sale, *except where minors or interdicted persons were part owners at the time of making it*. (Italics are the writer's.) In other words, if all those who own an interest in property are majors when the judicial proceedings are instituted and at the time the property is sold at public sale, such informalities as there may be in the legal procedure leading up to the sale and in the sale itself are prescribed against at the end of the two-year period. According to the wording of the article, prescription accrues at the end of two years unless a minor or minors were part owners of the property at the time of making the sale. The Code as amended goes further and says that, "in the event of such part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication thereof".

The article of the Code is not ambiguous and must be interpreted to mean what it says. We cannot assume that the lawmakers overlooked the fact that contingencies of this kind might arise, and, if they had intended that the acquisition by a minor of an interest in the property within the two-year period after the sale should interrupt the running of that prescription, they could, and no doubt would, have used language to make such intent plain. We think the two-year prescription is applicable to this case, and we so hold.

As to the fourth irregularity complained of, which is that the property did not sell for an amount sufficient to pay the claim of the foreclosing creditor, costs, and the balance due the Federal Land Bank, counsel say that this is a radical defect, or an absolute nullity, not curable by prescription. We find it unnecessary to discuss this point further than to say that counsel's argument is based on the false premise that the property did not sell for an amount sufficient to pay the claim of the foreclosing creditor, the costs, and the balance due the Federal Land Bank.

The property sold for $950. According to counsel's computation, the balance due under the mortgage, including the notes held by, and foreclosed on by, Miss Nannie Skannal, was $863.52. They add to this sum 10 per cent as attorney's fees, amounting to $86.35, making a total of principal, interest, and attorney's fees of $949.87, which was 13 cents less than the amount the property brought. The costs amounted to $65.65, which amount it was necessary to deduct, thus leaving only $884.35 to take care of the amount due under the mortgage.

Plaintiffs' error lies in the fact that they have computed attorney's fees at 10 per cent on the entire amount due on the mortgage, including the notes held by and foreclosed on by Miss Skannal and the balance due the land bank.

Miss Skannal acquired from the Federal Land Bank two notes of the series, one for $49.75 and the other for $54. The Federal Land Bank transferred these two notes to her with full subrogation of all its rights, including the right to foreclose. She did foreclose on these two notes, which with interest at 8 per cent amounted to $122.71.

She claimed attorney's fees, and, conceding that she was entitled to claim 10 per cent to cover such fees, she was entitled to receive only $12.27. If this sum is added to $863.52, the amount due on the entire mortgage, and if the costs, amounting to $65.65, are also added, the total sum obtained is $941.44. Since $950 was bid for the property, there was clearly enough to pay off the prior mortgage.

Under no conceivable theory could attorney's fees on the whole amount, which is not due and has not been foreclosed on, be added to the amount needed to pay off this prior obligation. By "prior obligation" we mean the balance due the Federal Land Bank, which under the terms of the mortgage should remain a first lien on the property sold. Under the precise language of the mortgage, the 10 per cent attorney's fees are due only if "the mortgagee herein, its successors and assigns, or attorneys, see fit to foreclose this mortgage in a court having jurisdiction thereof".

There is therefore no merit in counsel's fourth point, even if it be conceded that, where property is sold under foreclosure proceedings and brings an amount less than is necessary to pay all prior mortgages, the sale is an absolute nullity.

For the reasons which we have assigned in this opinion, plaintiffs' demand that the foreclosure proceedings and the sale thereunder be decreed null and void is rejected. We adhere to our original opinion and now reinstate our decree affirming the judgment appealed from, and make it the final decree of this court.

ROGERS, J., concurs and hands down reasons.

HIGGINS, J., concurs in the decree.

FOURNET, J., absent.

ROGERS, Justice (concurring).

I agree with the views expressed in the opinion of the court on rehearing relative to the alleged defects in the foreclosure proceeding and sale. But it is my opinion also that plaintiffs are without interest to attack the proceeding and sale. The foreclosure proceeding was based on the mortgage acquired by the Federal Land Bank from the widow and heirs of Zack Moore. Plaintiffs' right to attack the foreclosure proceeding and sale therein to A. C. Skannal could arise only after they had established their rights in the mortgaged property. Since, as was held in the original opinion, plaintiffs' rights in the property, if any they had, lapsed when the mortgage was executed in favor of the Federal Land Bank, it logically follows that they failed to establish such rights.

I concur in the decree reinstating our former decree, affirming the judgment appealed from and making it the final judgment of this court.