In March, 1939, the plaintiff levee board filed a suit in the nature of a concursus against the heirs of James Sperling and his wife (Wesley Sperling, James Sperling, Arthur Sperling, Surral Sperling, Lilly Sperling, Feldon and Lizzie Sperling Fennell) and Raymond Egle, asking the court to determine to whom should be paid the sum of $1,100, the amount deposited with the petition to cover the appropriation by the levee board of 1.40 acres of land in Morgan City, which tract of land the levee board acquired for the United States government for building a levee. The levee board, in its petition, set up the fact that it had appropriated this tract of land for levee purposes and that the tract was a part of a certain 5 1/2 acre tract of land acquired by said James Sperling in 1906; that in November, 1932, this tract of land was sold at tax sale for the taxes of 1931, assessed in the name of James Sperling, the tax purchaser being Charles C. DeGravelle; that by notarial act said tax purchaser conveyed all of his interest in the property to said Raymond Egle on January 6, 1933. It is alleged that the levee board obtained a deed from said Egle in August, 1938, transferring all of his interest in said 1.40 acre tract of land for levee purposes for the consideration of $1,100.
The levee board being advised that the above named heirs of James Sperling and his wife, deceased, were claiming to own said property, filed this suit in order to have the court decide as to whom the amount deposited should be paid. The above named heirs of James Sperling answered the suit and claimed that they were owners of the tract of land purported to have been sold for taxes in 1932, and attacked the tax sale on two grounds: (1) that the land was not properly assessed in the name of the co-owners; (2) that no notice of delinquency was given or served as required by law. Egle, who holds under the tax deed from DeGravelle, filed an exception of no right or cause of action to the petition of the levee board. This exception was overruled, and as it has not been mentioned or urged on appeal, we must assume that it has been abandoned. Egle filed what is called a plea of acquiescence and estoppel against the claim set up by the Sperling heirs. He also filed a plea of one and three years' prescription against the claim of the Sperling heirs and their attempt to set aside the tax sale. Egle then filed an answer and reconventional demand in which he set up his claim to the ownership of the land, asserted the validity of the tax deed, and reurged practically all the matters set forth in the above-mentioned pleas.
A judgment was rendered in favor of Egle and against the Sperling heirs, decreeing him to be entitled to the amount deposited in court by the levee board. The Sperling heirs have appealed, and Egle has answered the appeal and has asked this court to sustain his pleas of acquiescence, estoppel and prescription.
Egle does not seem to object any longer to the method of procedure adopted by the levee board in bringing this matter to an issue, and the suit might be considered as though the Sperling heirs were plaintiffs against Egle to set aside the tax deed. There is and can be no dispute as to the invalidity of the assessment made of the tract of land in 1931 in the name of James Sperling, as he had been dead for several years. His wife died in May, 1931. There is no evidence in the record, other than the recitations in the tax deed, to show on whom the notices of delinquency were served. Of course, as James Sperling was dead in 1932, he could not be served with such a notice, and there is no evidence to show that the surviving widow was served prior to her death, or that any of the six heirs were served. Therefore, the tax sale was null and void and should be set aside, unless the pleas of estoppel and acquiescence, or the plea of prescription should be maintained.
The plea of estoppel is based on the ground that Wesley Sperling, one of the heirs, was instrumental in getting Egle to *Page 382 
take over this property from the tax purchaser; that said Sperling knew of the tax sale, and acknowledged the ownership of the property by Egle who erected a sawmill on the property, and said Sperling worked for Egle in this sawmill and lived in a house on the land and recognized it as belonging to Egle. As we have reached the conclusion that the plea of prescription should be sustained, there is no need of passing on the plea of acquiescence and estoppel.
The tax sale was made on November 26, 1932, just after the adoption of the amendment to Section 11 of Article 10 of the Constitution in November, 1932, extending the prescriptive period for attacking a tax sale from three years to five years from the recordation of the tax deed. As the tax purchaser had not acquired any vested property rights under the previous three-year prescriptive period at the time this amendment extending the period went into effect, the right of the owners in the present case to attack the sale is controlled by the extended prescriptive period of five years. Splane et al. v. Tubre et al., La.App., 6 So.2d 361.
Under the above mentioned section of the Constitution, as amended, the prescription of five years has the effect of curing defects in a tax sale arising from an improper assessment and failure to give the required notice of delinquency, provided the property is sufficiently described so as to permit its identification, and provided further that the tax purchaser, his agent or transferee, goes into possession of the property and retains adverse or hostile possession as against the owner for the prescriptive period. Skannal v. Hespeth et al., 196 La. 87,198 So. 661.
The Sperling heirs did not file a proceeding to set aside the tax sale until they filed their answer and reconventional demand in this suit on March 23, 1939. It is true that some of them made some verbal claims of ownership to the property a year or two previous to this time but such indefinite and extra-judicial oral claims could not meet the constitutional requirements that a "proceeding to annul" the tax sale must be instituted within the five years. As more than five years elapsed between the recordation of the tax deed and the institution of a proceeding by the Sperling heirs to set aside the sale, it follows that if the tax purchaser or his transferee, Egle, had possession of the property as long as five years previous to March 23, 1939, the right of the Sperling heirs to attack the tax sale for the alleged defects has been barred under the constitutional peremption.
As already stated, Egle acquired a title from the original tax purchaser on January 6, 1933, and the evidence shows that he erected a sawmill on the tract of land a year after he acquired the title, or about January, 1934. At the time Egle acquired the title, none of the Sperling heirs were in possession of the property, except Wesley Sperling, who lived in the house which was located on the property at the time of the tax sale. Of course, if Wesley Sperling retained adverse possession of this house and the tract of land, his possession would inure to the benefit of the other co-heirs.
The record is clear that Wesley Sperling knew that Egle obtained a deed to the property from the tax purchaser. He also knew that Egle contemplated putting a sawmill on this property. He admits that Egle did put his sawmill on the property about a year after he acquired the property. Not only did Wesley Sperling acknowledge the possession of Egle in building and operating a sawmill on the tract of land, but he actually worked for Egle in this sawmill during all the time that it was in operation on the property. Moreover, Wesley Sperling acknowledged to various persons that Egle was the owner of the land and the house in which he (Sperling) lived.
Wesley Sperling went out and got timber for Egle to use in building the sawmill on the land and helped cut a ditch on the land to use in getting timber to the sawmill, and Egle paid him for this work. Egle testified that he furnished shingles to put on this house where Sperling lived, fixed the steps and furnished new sills and fence posts, and used one of the rooms in the house in which to store tools for use at the mill, all with the full knowledge and acquiescence of Wesley Sperling and without any claim on his part that he and his co-heirs owned the property. It is also shown that Sperling requested Egle to cut the house in two parts so as to give more room; also that in 1934, the W.P.A. built a sanitary toilet for this house, and Sperling told the foreman to see Egle as the house belonged to him, and the latter furnished the material used by the W.P.A. in building this sanitary toilet. Egle paid the taxes on the property from the time he secured the title, and none of the Sperling heirs during this time made any effort to get possession of the property. *Page 383 
Under these circumstances, we can hardly conceive of any other acts of possession and ownership Egle could have exercised over this property than he did from the early part of 1934 to March 23, 1939, a period of over five years. His possession was not only adverse and hostile to any claims that the Sperlings might have asserted, but his possession was with the full consent and approval of Wesley Sperling, the only one of the heirs who could pretend to have retained possession of the property after the tax sale as the representative of the other heirs so as to suspend the running of prescription.
For the reasons hereinabove assigned, it is ordered that the plea of prescription filed herein by Raymond Egle, be and the same is hereby sustained, and the judgment appealed from is affirmed at the cost of appellants in both courts.
Le BLANC, J., concurs.
DORE, J., dissents.