(115 So. 366)

No. 27338.

DOIRON et al. v. LOCK, MOORE & CO., Limited, et al.

Oct. 31, 1927. Rehearing Denied Jan. 18, 1928.

*(Syllabus by Editorial Staff.)*

**1. Deeds** ⬯211(1, 3)—**Evidence held not to show that vendor was mentally and physically incapable of transacting business and that deed was procured by fraud.**

Evidence *held* not to show that deceased vendor at time of executing deed was mentally and physically incapable of transacting business and that defendant's representative, who was also deceased, perpetrated fraud on vendor in procuring deed.

**2. Deeds** ⬯18—**Where deed did not state consideration, neither vendor nor persons claiming under her could question sale without proving simulation or fraud to her prejudice.**

Where consideration set forth in instrument of more than 25 years' standing was "sum of one dollar and other valuable consideration, receipt of which is hereby acknowledged," neither vendor nor any person claiming under her could question sale made without alleging or proving simulation or fraud to her prejudice.

**3. Contracts** ⬯99(1)—**In cases of executed contracts susceptible of tacit ratification, presumption of ratification juris et de jure results from silence during time fixed for prescription (Civ. Code, arts. 2221, 3542).**

In all cases of executed contracts susceptible of tacit ratification, presumption of ratification juris et de jure results from silence and inaction during time fixed for prescription, under Civ. Code, arts. 2221, 3542.

**4. Limitation of actions** ⬯46(9)—**Where consideration of executed land contract is not expressed, contract is not void where attack was not made until after 20 years from date of act.**

Where consideration of an executed contract of sale of land is not expressed, contract is not void where attack was not made until after 20 years from date of act, and payment of price or its equivalent will be inferred.

**5. Taxation** ⬯689(2)—**Tax sale is immune from attack that excessive assessment covered interest of co-owner acquiring tax deed, after constitutional prescription of three years has accrued.**

Where assessment covered interest in excess of interest owned by tax debtor and one of co-owners of tax debtor acquired title under tax sale, tax sale was immune from attack that excessive assessment covered interest of one acquiring title under tax sale as well as interest owned by the other co-owners after constitutional prescription of three years has accrued and is pleaded.

**6. Tenancy in common** ⬯34—**Acquiescence for more than 20 years ratified tax purchase by co-owner, and plaintiff co-owners thereby lost right to assert that purchase was for account of all.**

Acquiescence by plaintiffs for more than 20 years ratified tax purchase by their co-owner, and they lost right to assert that he purchased at tax sale for benefit of all, suspending prescription, since they could not sleep on their rights, await developments to see whether property would grow in value or not, and then exercise rights or not according to event.

**7. Real actions** ⬯7(3)—**Defendants in petitory action could claim ownership to property under different titles (Civ. Code, art. 2443).**

Defendants in petitory action could claim ownership to property under different titles, and fact that they subsequently acquired title from one whose interest they claimed they had previously acquired under tax sale did not destroy their claim of good faith under previous titles, although purchase of one's own property is null and void under Civ. Code, art. 2443.

**8. Real actions** ⬯7(2)—**In petitory action, plaintiffs must recover on strength of their own title.**

In petitory action, plaintiffs must recover on strength of their own title and not on weakness of defendant's title, and it is incumbent on plaintiffs to show, not only better title than defendants, but one as good as or better than any the latter can oppose to them, whether vested in the defendants or not.

O'Niell, C. J., dissenting.

Appeal from Fourteenth Judicial District Court, Parish of Calcasieu; Jerry Cline, Judge.

Suit by Rosamond Doiron and others against Lock, Moore & Co., Limited, and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Robert R. Stone, of Lake Charles, and Donelson Caffery, of New Orleans, for appellants.

Pujo, Bell & Hardin, of Lake Charles, for appellees.

ROGERS, J. On June 20, 1853, Cyprian Verdine purchased from Edward Vaughan a certain tract of land containing 298 acres of the Dempsey Iles Rio Hondo claim No. 252 situated on or near the Calcasieu river in the parish of Calcasieu. The deed was duly recorded in the parish records.

Cyprian Verdine died without issue about 1865. He was one of the 11 children of Leon Verdine, Sr., and Pauline Sennett. He was survived by his father and certain of his brothers and sisters and the descendants of a predeceased brother, John Baptiste Verdine, who died the same year. His succession was opened in June, 1867, but, apparently was never closed. However, a number of his heirs conveyed their interests in the property to the defendant Lock, Moore & Co., Limited. This company under a claim of ownership is now, and has been for many years, in actual possession of a portion, and the constructive possession of the whole, of the property. The defendant Vacuum Oil Company is the lessee from its codefendant and in possession of the oil and mineral rights thereon.

Plaintiffs, as the heirs of Cyprian Verdine, and as the heirs and by representation of his father and their ancestor, Leon Verdine, seek in this suit to be recognized as the owners of an undivided $17/60$ interest in the property, and to compel the delivery thereof to them by the defendants. Their action is therefore petitory, with the exception of the demand which they have cumulated therewith for the nullity and rescission of a certain deed executed in the year 1896 by Leonise Verdine, sister of Cyprian Verdine, to the defendant Lock, Moore & Co., Limited.

The court below rejected plaintiffs' demands, and they appealed.

Defendants, in their answers, set up their title, affirm the validity of the deed from Leonise Verdine, and plead the prescription of 3, 10, and 30 years.

Plaintiffs admit the validity of defendants' title to approximately 50 of the 298 acres in the tract of land, but insist upon their demand to be declared the owners, in varying proportions, of an undivided $17/60$ (instead of $14/42$ as claimed in the petition) interest in the remaining 248 acres.

On April 1, 1895, Leonise Verdine sold to the defendant Lock, Moore & Co., Limited, the interest in the property which she had inherited from her deceased father, Leon Verdine. This deed was duly recorded in the parish records. On June 17, 1896, the same vendor sold to the same vendee all her right, title, and interest in and to the estate of her deceased brother, Cyprian Verdine. This transfer included, necessarily, the interest in the property inherited by the transferor from her said deceased brother. The deed was also recorded in the parish records.

[1] Plaintiffs do not question the validity of the first of these deeds, but they attack the other instrument on two grounds, viz.: (1) That at time of its execution the alleged vendor was mentally and physically incapable of transacting business; and (2) that it was without consideration.

The controverted deed purports to have been signed by the vendor by her mark, and to have been witnessed by Mrs. Laura Doiron and her sister, Mrs. Annie Frilot, nieces of the vendor. On December 9, 1896, about six months after its execution, the witness, Laura Doiron, appeared before a notary public of the parish, and declared, under

oath, that she saw the deed signed by the contracting parties and the other witness, and signed as a witness herself; that she believed the instrument was executed in good faith and for the uses and purposes therein expressed.

Plaintiffs support this phase of their attack upon the deed by the testimony of Mrs. Laura Doiron, Mrs. Rosa Wise, her sister, who are among the plaintiffs in the suit, and Mrs. Ida O'Quinn, formerly the wife of a nephew of the vendor. Mrs. Wise and Mrs. O'Quinn claim to have been present in the room at the time the deed was signed. The purport of the testimony of the witnesses is that on the day the instrument was executed, Leonise Verdine, the vendor, was incapacitated physically and mentally; that Captain George Lock, who acted for Lock, Moore & Co., Limited, guided her hand in making her mark, without any manifestation on her part that she knew what she was doing; and that shortly thereafter, on the same day, she died.

Captain Lock died in the year 1917, so that the defendants were unable to offer any witnesses to rebut the statements of the witnesses, except the one that Leonise Verdine died on the day the deed was signed. There is respectable testimony in the record that her death from tuberculosis did not occur until several days after that date.

There is also abundant testimony in the record of the high character of Captain Lock and the commanding position occupied by him for many years in the community in which he lived and in which the transaction now questioned was entered into. It is incredible that a man of his stamp could have been guilty of the fraudulent act with which he is now charged.

It is to be observed that the persons called by Captain Lock to attest the deed were nieces of the vendor. It is highly improbable that he would have asked them to serve as witnesses if he was not acting in good faith. It is to be further observed that one of the witnesses, Mrs. Doiron, subsequently appeared before a notary public and certified, under oath, to the correctness and good faith of the transaction. In order to escape the effect of her act, she testified, on the trial of this case, that, after first objecting, she was induced, finally, to make the declaration in order to hold certain of her relatives in their employment at the sawmill of Lock, Moore & Co., Limited. But the evidence that such was the fact is unsatisfactory and unconvincing. The notary public before whom the declaration was made had long since died, and the court was therefore deprived of the benefit of his testimony concerning the circumstances under which it was made. Besides, the time for an effective protest would have been when Mrs. Doiron was called upon to witness the execution of the deed. It does not appear that any objection was interposed then. Nor does it appear that any objection was ever made, or that any claim for the nullity of the transaction was set up by any of the heirs of Leonise Verdine until the present suit was filed, more than 28 years after the date of the deed, and 7 years after the date of the death of Captain Lock, who could no longer speak in defense of the transaction and of his own good name, and when by the discovery of oil in its vicinity the property had, suddenly, greatly enhanced in value. In these circumstances, the testimony of the witnesses, none of whom is disinterested, and two of whom stand to be benefited materially by the acceptance of their statements by the court, is an unsafe foundation upon which to rest a judgment in plaintiffs' favor.

[2] Plaintiffs also attack the form of the deed, and allege that, as disclosed by the consideration expressed, it was a disguised donation.

The consideration set forth in the instrument is "the sum of one dollar and other valuable consideration, receipt of which is hereby acknowledged."

The conveyance from Leonise Verdine to Lock, Moore & Co., Limited, is an executed contract of more than 25 years' standing. Neither the said vendor, nor any person claiming under her, is permitted to question the sale she has made without alleging and proving simulation or fraud to her prejudice. See Read v. Hewitt, 120 La. 288, 45 So. 143. No attempt has been made to prove simulation, and the attempt to show that a fraud was perpetrated upon the vendor has failed.

For more than 25 years prior to the institution of this suit, none of the plaintiffs exercised, or attempted to exercise, any rights of ownership in the property. On the contrary, during that entire period, it has been in the possession and use of the vendee, Lock, Moore & Co., Limited, as owner.

[3, 4] Actions of nullity and for rescission are prescribed in 5 and 10 years. Civ. Code, arts. 2221 and 3542. In all cases of executed contracts susceptible of tacit ratification, a presumption of ratification juris et de jure results from silence and inaction during the time fixed for prescription. And where the consideration of an executed contract of the sale of land is not expressed, the contract is not void, where the attack was not made until after 20 years from the date of the act, and the payment of the price or its equivalent will be inferred. Barnes v. Barnes, 155 La. 981, 99 So. 719. See, also, Read v. Hewitt, ut supra.

One of the muniments of title set up by the defendants is a tax deed whereby Captain Lock, acting for his company, acquired the undivided interest of Margaret, or Maggie Cole, in the property. The sale was made on October 17, 1899, by the sheriff of the parish for the delinquent taxes of 1898 under act 170 of that year. The deed was recorded on November 10, 1899.

Plaintiffs contend the tax sale is defective because the description given in the assessment was insufficient to identify the property and that it covered more than the interest of the tax debtor, and that, if not invalid, the acquisition by the tax purchaser inured to the benefit of all the co-owners. Defendants, in addition to affirming the validity of the sale, pleaded the constitutional prescription of three years and the statutory prescription of ten years to the attack upon the tax title.

It appears from the record that the tax debtor was the daughter of Adeline Verdine Vincent, sister of Cyprian Verdine. In 1898, as an heir of her mother and of certain other persons, she was the record owner of an undivided interest in the property. At that time, Lock, Moore & Co., Limited, through direct purchases and mesne conveyances from the Verdine heirs, was also the owner of an undivided interest (not less than one-fourth) in the property.

The district judge found that the description as set forth on the assessment roll and in the tax deed was sufficient to identify the property. In this we think he was correct.

[5] The assessment, however, apparently covered interests in excess of the interest owned by the tax debtor. This excess belonged either to Lock, Moore & Co., Limited, or to certain of the heirs of Cyprian Verdine.

Plaintiffs argue that the excessive assessment may have covered the interest of Lock, Moore & Co., Limited, as well as the interest owned by them. But they failed to prove that they paid any taxes whatsoever. On the other hand, Lock, Moore & Co., Limited, showed it had paid all the taxes due by the company. In these circumstances, the assessment and sale were intended, undoubtedly, to cover, and did cover, whatever interest the plaintiffs may have owned in the property. A tax sale is immune from an attack of this character after the constitutional prescription of three years has accrued and is pleaded.

[6] The supplementary contention of plaintiffs that the possession of the tax purchaser was the possession of all the co-owners, suspending prescription, and that its purchase inured to the benefit of all the co-owners, was correctly disposed of by the district judge as follows, viz.:

"As to the interruption of prescription by possession for all, it will cease, of course, when the possession by the tax purchaser for himself is held to have begun under the tax deed; and that begins when, if ever, the co-owner loses the right to redeem his title.

"There is no statutory law prohibiting the purchase of an undivided interest in land by a co-owner at tax sale; but if he does purchase, equity holds that the tax deed inures to the benefit of his co-owners, at their option. They may or may not exercise their option by paying their portion of the tax and demanding a reconveyance; and if they fail to do so within a reasonable time, the tax purchaser may rely upon their acquiescence and hold the title as his individual property.

"The authorities are uniform that the equitable principle which protects common tenants from loss by tax adjudications to either of them also protects the adjudicatee from belated claims for reconveyance by his co-owners. They cannot indefinitely neglect their duties to the property and to their co-owner and still claim rights which rest upon those duties. '[They,] cannot sleep upon this right, await developments, to see whether the property will grow in value or not, and then exercise the rights or not, according to the event.' Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am. St. Rep. 375; Joffrion v. Gumbel, 123 La. 391, 48 So. 1007; Cooper v. Edwards, 152 La. 23, 92 So. 721; Yestal v. Producers Oil Co., 135 La. 984, 66 So. 334.

"The tax sale in this case comes within the principles thus laid down. The defendant company has been in possession actually of a large portion of the property and constructively of all of it, for more than 20 years. Large manufacturing enterprises, with the incidental structures of mills, offices, residences, commissaries, tramways, roads and fences have grown up, lived their lives, and many of them decayed or been removed. And during all these years the plaintiffs asserted no claim, demanded no rights, assumed no duties. It was only when speculative values by reason of explorations for oil affected the property that their inaction ceased. Their long acquiescence has ratified the tax purchase by their co-owner, and they have lost the right to assert that he purchased for the account of all."

165 LA.—3

The admitted interest of Lock, Moore & Co., Limited, together with the interest acquired from Maggie Cole at tax sale and from Leonise Verdine by purchase, cover more than the entire property. On November 28, 1923, by mesne conveyance, Lock, Moore & Co., Limited, acquired, additionally, from Maggie Cole (now Maggie Brown) her whole interest, if any, in the property.

[7] Without pleading in the alternative, the defendants set up all their titles. Plaintiffs aver inconsistency, and contend that the titles subsequently acquired destroyed defendants' claim of good faith under previous titles.

We do not find any inconsistency in defendants' plea. We know of no law which prevents a party from claiming ownership to property under different titles. Of course, the purchase of one's own property is null. Civ. Code, art. 2443.

[8] The rule invoked by plaintiff does not apply here. This is a petitory action in which the plaintiffs must recover upon the strength of their own title and not upon the weakness of the defendants' title. It is incumbent upon them to show, not only a better title than that of the defendants, but one as good as, or better than, any the latter can oppose to them, whether vested in the defendants or not.

Lock, Moore & Co., Limited, was, undoubtedly, acting in good faith at the time of its several acquisitions. Its subsequent acquisition of any rights Maggie Cole (Brown) had or might have does not prove the contrary. It is clear that the quitclaim was secured from Mrs. Brown out of an abundance of caution, in view of the claim of interest and threatened litigation on the part of the Verdine heirs after the lease with the Vacuum Oil Company had been executed.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellants.

O'NIELL, C. J., dissents, particularly from the ruling that the tax sale of the undivided interest of Margaret Cole in the property inherited by the heirs of Cyprian Verdine was translative of title for the whole property.

(Syllabus by Editorial Staff.)

