144 So.2d 384

Fred MONK

v.

Mrs. Etta Bell MONK.

No. 45930.

June 6, 1962.

Rehearing Denied Oct. 3, 1962.

Hayes, Harkey & Smith, Monroe, for plaintiff-appellee-relator.

Jones, Blackwell, Chambliss & Hobbs, West Monroe, for defendant-appellant-respondent.

FOURNET, Chief Justice.

Fred Monk instituted this suit in 1958 against his former wife, Etta Bell Monk,[1]

1. Although the plaintiff's suit is entitled Fred Monk v. Mrs. Etta Bell Monk, wife of John Costin, Jr., and the citation of the appellate court decision gives the case

seeking to be declared the owner of an undivided half interest in a thirty-acre tract of land located in Ouachita Parish[2] acquired in the wife's name during the existence of the community of acquets and gains established by the marriage of the parties in 1924, and dissolved in 1939 by their judicial separation.[3] The matter is now before us to review the judgment of the appellate court reversing the lower court judgment favorable to the plaintiff and dismissing his suit on defendant's plea of estoppel. See, Monk v. Costin, La.App., 134 So.2d 598.

The record discloses that during the existence of the community of acquets and gains between the parties, plaintiff's mother, Mrs. Lorinda Monk, on September 28, 1928, a few days prior to her death, executed a deed by authentic act whereby, for a recited consideration of $300 in cash, she conveyed the property in question to her then daughter-in-law. This deed contains the stipulation that the daughter-in-law, Mrs. Etta Monk, was "appearing and purchasing the * * * property with her own separate paraphernal funds over which her said husband had no control," as well as the further stipulation to the effect it was understood the property was not only purchased by Mrs. Monk with her separate

funds, but that it would, thenceforth, "be the separate and paraphernal property of the said Mrs. Etta Monk and not the property of the community existing between her and her said husband."

The evidence establishes the fact that while plaintiff did not himself sign the act, either as the husband acknowledging the verity of its contents or in any other capacity whatsoever, he was instrumental in procuring its preparation, execution, and recordation by causing it to be drawn; engaging the services of a notary public to officiate at its execution; which took place in his presence at his mother's home; and having it recorded the following day. The record also shows a small house was subsequently built on the property by the husband and that it was used by him, his wife, and their children as the matrimonial domicile until the legal separation in 1939.

The defendant claims that under the circumstances above outlined, and the fact plaintiff claimed no interest in the property from the day the deed was executed until the day this suit was filed—a period of almost 30 years—and signed as a witness a mineral lease executed by her by authentic act, he is estopped from denying she acquired the property as stated in the deed, i. e., as her paraphernal property. In ad-

as Monk v. Costin, during the trial defendant admitted she had never, in fact, been legally married to Costin.

2. This property is described as the E/2 of the NE/4 of SW/4; and E/2 of W/2

of NE/4 of SW/4 of Section 31, T. 18 N., R. 1 E., Ouachita Parish.

3. In the judgments for separation and divorce, there is no mention whatever about property of any kind.

dition, she has pleaded the exceptions of no cause and no right of action predicated on the same contention, prescription of ten years acquirenda causa under Articles 3474, 3478–3482, and 3451 of the Revised Civil Code; and the ten year liberative prescription under Article 2221 of the Revised Civil Code.

■ It has long and firmly been established under the jurisprudence of this court that a husband who has been a party to an act of purchase, in which it is declared the consideration belonged to the wife in her paraphernality and the property is to be such, *either by signing the deed or as a witness thereto,* cannot, thereafter, be heard to contradict it. Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676; Pfister v. Casso, 161 La. 940, 109 So. 770; Tonglet v. Chopin, 155 La. 752, 99 So. 587; Fireman's Ins. Co. v. Hava, 140 La. 638, 73 So. 708; Karcher v. Karcher, 138 La. 288, 70 So. 228; Maguire v. Maguire, 40 La.Ann. 579, 4 So. 492. This is known in law as estoppel by deed, and is based on the public policy of this state in order that there may be some security of titles. However, under the facts of this case this rule has no application, and a review of the authorities relied on by counsel for defendant are inapplicable from a legal or factual standpoint.

The fact plaintiff signed a mineral lease executed by the defendant on March 24, 1937, does not aid the defendant's cause under the above jurisprudence, and for the further fact that this lease was executed during the existence of the community. Finally, there is no mention whatsoever in the lease that the property involved was defendant's separate property; indeed, the lease contains a provision to the effect that if she owned "a less interest" than the entire undivided fee simple estate, then the royalties and rentals provided for would be paid her only in proportion to that interest.

Significantly, several months later, on November 15, 1937, and also during the existence of the community, Mrs. Monk, *jointly* with Mr. Monk, conveyed a mineral interest in the land to a Dr. Edgar B. Hands, they purportedly appearing therein as the owners of this property and warranting their title. This evidences the fact Mr. Monk was, at that time, not only asserting his ownership of an interest therein, but also that Mrs. Monk recognized his right to that interest. It is further significant that on April 7, 1945—after the legal separation and divorce and long prior to the expiration of thirty years—the plaintiff, in his own name, granted a mineral lease affecting the property to The California Company, and, on May 3, 1958, granted another mineral lease affecting the same property to the Southwest Natural Production Company. This reflects the plaintiff has, consistently from November 15, 1937, during the existence of the community, and, thereafter, until this suit was filed on Sep-

tember 17, 1958, treated this property as property in which he owned an interest.

█ Inasmuch, therefore, as the plaintiff did not sign the deed of 1928 in any capacity whatsoever, and for the further reason that defendant failed to allege and prove she was, by acts or inducements of either omission or commission, influenced to act to her harm or prejudice, or that she has been made to rely to her detriment or change her position in any way by any misrepresentations made by the plaintiff—essential and sacramental elements for the maintenance of such a plea—defendant's plea of estoppel, as well as the exceptions of no right and no cause of action predicated on the same argument, should have been, and are, hereby, overruled.

█ With respect to the purported long silence of the plaintiff and his failure to sooner assert in judicial proceedings his alleged interest in this property, the facts just set out not only refute this, but "It has long been a fundamental principle deeply embedded in our law and jurisprudence that title to realty cannot be established by waiver or by estoppel; for one can never be divested of his title to realty except in the manner prescribed by law," such as by deed, inheritance, or prescription. Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454. See, also, Gibson v. Pickens, 187 La. 860, 175 So. 600; Nielson v. Haas, La.App., 192 So. 716; Snelling v. Adair, 196 La. 624,

199 So. 782; Waterman v. Tidewater Associated Oil Company, 213 La. 588, 35 So. 2d 225; and Harrell v. Stumberg, 220 La. 811, 57 So.2d 692.

█ In order to establish the paraphernality of property acquired by deed during the community in her own name, a wife must prove "(1) the paraphernality of the funds used for the purchase; (2) her individual administration of the property; and (3) that the money was invested by her. In the event the purchase is made on credit, she has the further burden of establishing (4) that she not only made the down payment out of her separate and paraphernal funds, but that she had sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to meet the deferred payments." Betz v. Riviere, 211 La. 43, 29 So.2d 465. See, also, Succession of Manning, 150 La. 1008, 91 So. 435; Houghton v. Hall, 177 La. 237, 148 So. 37; Cameron v. Rowland, 215 La. 177, 40 So.2d 1; Succession of Franek, 224 La. 747, 70 So.2d 670 (on rehearing); Prince v. Hopson, 230 La. 575, 89 So.2d 128; Southwest Natural Production Co. v. Anderson, 239 La. 490, 118 So.2d 897; and the authorities therein cited.

██ A study and analysis of the evidence, in our opinion, clearly sustains the trial judge's conclusion that the defendant signally failed to bear the great burden that was hers in this respect. The only evi-

dence in the record to this effect is her un-corroborated testimony she received $200 of the consideration paid from the sale of her father's succession property, and a manual gift of $100 from her brother in 1925, she, during the interval until the purchase in 1928 keeping this $300 either about her person or buried in a container near the various residences to which the family moved in continuous financial hardship. Moreover, with respect to the item of $200 she is impeached, both by her sister and her former husband, who testified her share of the proceeds of her father's property was between $60 and $65, or, as the sister said, $62.50, and, according to the plaintiff, most of this was almost immediately spent for badly needed supplies and clothing. As to the $100, purportedly a manual gift from the brother, she failed to produce him as a witness, or to explain why he was not present. Consequently, the presumption is his testimony on this phase of the case would have been adverse to her cause. See, Perez v. Meraux, 201 La. 498, 9 So.2d 662; Succession of Yeates, 213 La. 541, 35 So.2d 210; Olivier's Minor Children v. Olivier, 215 La. 412, 40 So.2d 803; Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369; Fried v. Bradley, 219 La. 59, 52 So.2d 247; John v. John, 224 La. 426, 69 So.2d 737; Melancon v. Texas Co., 230 La. 593, 89 So.2d 135; and Martin v. T. L. James & Co., 237 La. 633, 112 So.2d 86.

It necessarily follows, therefore, that the property fell into the community of acquets and gains under Articles 2402 and 2405 of the Revised Civil Code, and that when the community was dissolved by the judgment of separation in 1939, the plaintiff, on that day, became an owner of an undivided half interest in and to this property. Article 2406 of the Revised Civil Code.

The plea of prescription of ten years acquirendi causa is equally without merit, for before this prescription can effectively aid in the acquisition of property, the party invoking it must hold under a deed translative of title, and have possessed the property, purportedly transferred, in good faith for a period of more than ten years. During the existence of the marriage the defendant was possessing this property under a community deed, and, therefore, for the community; indeed, during this period both the plaintiff and defendant were in physical possession of the property. And while it is true the defendant possessed the property following the separation in 1939 for a period exceeding ten years, this possession, even had it been in good faith, could not aid her in the acquisition of her husband's undivided half of the property for the very simple reason she held under no deed conveying this interest to her.

The prescription of ten years pleaded under Article 2221 of the Revised Civil

Code must also fall, for this prescription applies to the time limit within which an agreement may be annulled or rescinded, and the husband is not here endeavoring to set aside a deed, but merely to be declared an owner of an undivided half interest in the property under the deed whereby his former wife acquired the property in 1928, during the existence of the community, and the community nature of which has not been disproved.

In argument—stressed particularly in a supplemental brief—it is contended the plaintiff enlarged his pleadings by his testimony to the effect no consideration had been given by defendant at the time the deed was executed, and, as thus enlarged, plaintiff has made it possible, by his admissions, for defendant to be declared the owner of the property as a donation to her, which, under the provisions of Article 2334 of the Revised Civil Code, made it her separate property.

■ This argument lacks merit because the pleadings are not enlarged by the introduction of admissible evidence (Phillips v. New Amsterdam Casualty Co., 193 La. 314, 190 So. 565; City of Shreveport v. Chatwin, 139 La. 531, 71 So. 791; Succession of Dauphin, 112 La. 103, 36 So. 287), and this testimony by the plaintiff was clearly admissible for the purpose of rebutting the allegations and testimony of the defendant to the effect she purchased this property with her paraphernal funds.[4]

For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is reversed and the judgment in favor of the plaintiff rendered by the district court, declaring him to be the owner of an undivided half interest in the property in controversy, is reinstated and affirmed. The defendant is to pay all costs.

HAWTHORNE, J., concurs in the decree.

4. Counsel representing defendant having confined the argument on this point to the pleadings, does not contend the conveyance was in fact a donation, and we are not called upon to decide whether parol evidence could be considered to vary or contradict such a contract in order to substitute in its place a contract of an entirely different nature. Nor need we decide whether defendant, having sought unsuccessfully to establish the conveyance was a sale to her, can now be heard to impeach her own testimony and maintain the conveyance was not a sale at all.