AYRES, Judge.
By this proceeding, originally instituted by Wade Caldwell and Sammie Watson, but who were later joined by John Caldwell and Amos Watson, the opening of the succession of their grandparents, Prior and Mindy Caldwell, was sought. Petitioners further sought to be recognized and decreed the owners of their certain respective, alleged interests in a described 80-acre tract of land in Jackson Parish. Made defendants were Earl Caldwell, son of Mindy and Prior Caldwell, and the more remote descendents of the deceased parties as their heirs. Earl Caldwell, however, is the principal defendant, who, by answer, claimed title to the property by virtue of a tax deed executed pursuant to an adjudication of the property to him in 1933 for the unpaid taxes of 1932. Certain of the heirs were absentees and nonresidents of the State. They were made parties-defendants and served through a curator ad hoc who filed an answer in their behalf. All other defendants made no appearance and a default was duly entered against them.
After trial, there was judgment in favor of the defendant, Earl Caldwell, rejecting plaintiffs’ demands, specifically naming Wade Caldwell and Sammie Watson. From the judgment, these, as well as the plaintiffs, John Caldwell and Amos Watson, prosecute this, a devolutive, appeal.
The issues involved in this appeal relate to the validity of the aforesaid tax sale of the subject property to Earl Caldwell. This property was acquired by Prior and Mindy Caldwell on May 21, 1896, by patent from the United States Government. It constituted an asset of the community of acquets and gains then existing between them. Of the marriage of Prior and Mindy Caldwell, seven children were born. Mindy Caldwell died intestate in 1916 and Prior Caldwell, intestate in 1921. Six of the children are also dead; only one, Earl Caldwell, survives. Earl Caldwell lived with his parents upon the property involved throughout his lifetime until their death.
For many years prior to 1932, Earl Caldwell paid the taxes upon the property. In 1933, he “bought it in” at tax sale for the unpaid taxes of the previous year. According to his testimony, he was unable to pay the taxes as they came due the previous year, and, moreover, had to borrow the money with which to make the purchase in 1933.
This tax purchaser’s possession has been, since his acquisition, as owner of the property. He has continuously lived upon the same; has improved it by constructing a house and barn, and by planting pecan trees; has farmed and has grazed cattle upon it; and has cut timber therefrom. Neither of the other heirs of Prior and Mindy Caldwell, except this defendant’s brother, Lewis Caldwell, who, in 1937, purported to sell a mineral interest in the property, manifested or indicated any interest in the property until 1957, when Wade Caldwell and Sammie Watson began to make some inquiries following the execution in that year by Earl Caldwell of an oil, gas, and mineral lease for a consideration of $800, when the property appeared to have some prospective, enhanced value.
Thus, defendant’s position is that plaintiffs, by their inaction and delay for a period of 25 years, during which time neither they nor their ancestors-in-title, who had knowledge of the tax sale, manifested or indicated any interest in or claim to the property or a desire to effect a redemption thereof from the tax sale, or to reimburse defendant for the taxes paid, are guilty of laches, and are now, when the property has increased in value, precluded, barred, and estopped from seeking a divestiture of defendant’s title.
We recognize the principle established in the jurisprudence that
“ ‘ * * * title to realty cannot be established by waiver or by estoppel; *450 for one can never be divested of his title to realty except in the manner prescribed by law,’ such as by deed, inheritance, or prescription. * * * ” Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454; Monk v. Monk, 243 La. 429, 144 So.2d 384.
See, also, the authorities therein cited.
This principle appears to us, however, to afford no aid or comfort to plaintiffs, but it rather inures to the benefit of the defendant tax purchaser. The defendant need not rely upon or invoke the principle to create a title in him or to aid or support him in his title, as he acquired the legal title to the property by the tax deed issued pursuant to the adjudication of the property to him. The principle, therefore, may be invoked by a tax purchaser when the title acquired by him is assailed or is sought to be divested or destroyed.
The plaintiffs, however, would invoke the principle to invest, or to reinvest themselves, or to create and establish, in them title to the property in which they now have none. Title cannot be so created or established. Appropriate to the situation here is an observation made by the Supreme Court in Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481, 483-484, wherein it was stated:
“It is the established jurisprudence that property sold to one coowner or coheir for delinquent taxes is regarded, so far as his coowners are concerned, as merely a payment of the taxes for all and any one or more of them may be reinvested with title by making claim on the tax purchasing coowner within a reasonable time and paying his proportionate share of the adjudication and subsequent installments. Harris v. Natalbany Lumber Co., 119 La. 978, 44 So. 806; Vestal v. Producers’ Oil Co., 135 La. 984, 66 So. 334; Cooper v. Edwards, 152 La. 23, 92 So. 721; Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366; Skannal v. Hespeth, 196 La. 87, 198 So. 661 and Keller v. Haas, 209 La. 343, 24 So.2d 610. However, it is important to note, as a careful examination of the above cited cases will reveal, that a coowner who purchases at a tax sale acquires the legal title to the adjudicated property and that the right of his coowner to be reinvested with legal title is not a statutory or constitutional right but, rather, rests exclusively upon equitable considerations. See Cooper v. Edwards, supra; Harrell v. Harrell, 174 La. 957, 142 So. 138 and other cases above cited. Principles of equity are thus invoked to protect such coowners by not permitting the tax purchasing coowner to profit at their expense provided, of course, that they act with diligence.
“The jurisprudence on the subject discloses that there are two situations in which a coowner may lose his equitable right to have his legal title restored by paying to the tax purchasing coowner his proportionate share of the adjudicated price together with all taxes which have subsequently become due. Those instances are (1), when the co-owner has not come forward to regain his rights within a time considered reasonable under all circumstances presented in the particular case, he is held to be estopped by his laches from asserting his claim and (2), whenever the rights of third parties have intervened.” (Emphasis supplied.)
Thus, we may observe there is no statutory law prohibiting the purchase of land by a co-owner at tax sale; such purchase, however, inures to the benefit of his co-owners at their option. This option, they may or may not exercise at their discretion. If an election is made to exercise the option, payment of the proportionate part of the tax may be made and a reconveyance obtained. However, if the co-owners fail to exercise the option within a reasonable time, the taxpayer may rely upon their acquiescence and hold the same as his individual property.
*451 The authorities are uniform that the equitable principle which protects co-owners or coheirs from loss by tax adjudications to either of them also protects the purchasers from belated claims by their coheirs or co-owners for reconveyance. They cannot indefinitely neglect their duties to the property and to their co-owners or coheirs and still claim rights which exist and rest upon those duties. They cannot, therefore, sleep upon this right, await developments to see whether the property will enhance in value or not, and then exercise the rights or not, according to the events. Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366; Cooper v. Edwards, 152 La. 23, 92 So. 721; Vestal v. Producers’ Oil Co., 135 La. 984, 66 So. 334; Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am.St.Rep. 375; Joffrion v. Gumbel, 123 La. 391, 48 So. 1007.
In the first of the aforesaid cases, it was held that, where plaintiffs had, for more than 20 years, acquiesced in a tax purchase by a co-owner, they had ratified such purchase and lost the right to assert that the co-owner purchased at tax sale for the benefit of all.
Our conclusion is, from the facts established in the record of this case, that it is too late for plaintiffs, after silence, inactivity, and acquiescence in the tax sale over a period of 25 years, to invoke the equitable doctrine of estoppel, in view of the enhanced, value of the property. They are, therefore, in our opinion, barred, precluded, and estopped by their laches from asserting claims in the property.
Therefore, while we conclude that the judgment appealed, rejecting plaintiffs’ demands, is correct, we find it in improper form in not describing the property involved as required by LSA-C.C.P. Art. 2089. Of necessity, the judgment must, therefore, be recast.
Accordingly, for the reasons assigned, the judgment appealed is amended and recast to read as follows:
It is therefore Ordered, Adjudged, and Decreed there be judgment herein in favor of the defendant, Earl Caldwell, and against the plaintiffs.
Wade Caldwell,
Sammie Watson,
John Caldwell, and
Amos Watson,
and against the defendants,
Walter C. Caldwell,
Bobbie Caldwell,
Ernest C. Caldwell,
Lilly Caldwell,
Willie Mae Williams,
Frank Watson,
Fannie Watson,
Willie Caldwell, and
Leila Caldwell,
recognizing and decreeing defendant, Earl Caldwell, the owner of the following-described property, to-wit:
East VS of SW y4, Sec. 26, T. 17 N., R. 2 W., Louisiana meridian, Jackson Parish, Louisiana, together with all the improvements thereon and appurtenances thereunto belonging, and being the same property as that described in a patent issued by the U. S. Government to Prior Caldwell dated May 21, 1896, and recorded under date of February 7, 1900, in Book F, page 726, of the Conveyance Records of Jackson Parish, Louisiana.
It is further Ordered, Adjudged, and Decreed that plaintiffs pay all costs, and, as amended and recast, the judgment appealed is affirmed.
Amended and affirmed.