354 So.2d 572 (1977)
Aaron Lester SARPY
v.
Theresa Locicero SARPY.
No. 8513.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 1977.
Rehearing Denied February 14, 1978.
Writ Refused March 27, 1978.
*573 Jacob L. Karno, Metairie, for plaintiff-appellee.
Frank J. D'Amico, New Orleans, for defendant-appellant.
Before LEMMON, GULOTTA and SCHOTT, JJ.
LEMMON, Judge.
This is a suit by Aaron Sarpy to annul two donations inter vivos of immovable property to his former wife on the basis that the acts were not passed before a notary public and two witnesses, as required by C.C. art. 1536. Mrs. Sarpy has appealed from a summary judgment declaring the donations null and void.
The two donations were executed during the marriage between the parties, and both donations involved Mr. Sarpy's separate *574 property.[1] Affidavits and depositions established that (1) the 1970 act was executed in the Sarpy home with only Mr. and Mrs. Sarpy present, the notary and witnesses signing a day or two later, and (2) the 1971 act was executed in the Sarpy home with only Mr. and Mrs. Sarpy and the two witnesses present, the notary signing a day or two later.
The basic issue in this appeal is whether Mr. Sarpy, on these undisputed facts, is entitled to judgment as a matter of law.
C.C. art. 1536 provides:
"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
Mrs. Sarpy points out that both parties, the notary and the witnesses admitted the genuineness of the signatures. Citing C.C. art. 2242, she argues that, as between the parties to the act of donation, the act has the same credit as an authentic act.[2]
C.C. art. 2236 provides that an authentic act (defined by C.C. art. 2234 as one executed before a notary public and two witnesses) is full proof of the agreement contained in the act, against the contracting parties and their heirs or assigns. C.C. art. 2242 accords an act under private signature, if acknowledged by the party against whom it is adduced, the same probative credit as an authentic act.
C.C. art. 1536, however, is not concerned with the proof of consent, capacity or the other requisites to the validity of a contract, but with the requirements of form. A donation inter vivos is a formal contract, which is not based on the mere consent of the parties. 3 Planiol, Treatise on the Civil Law, § 2523 (La.St.L.Inst.Trans.1959).[3] In order for a donation inter vivos of immovable property to be valid, the parties must comply strictly with the requirements of C.C. art. 1536, and the act must be passed before a notary public and two witnesses.
In this case each act of donation on its face appears to have been passed before a notary public and two witnesses, but the evidence proves otherwise.[4] An act of donation executed outside the presence of a notary is not sufficient, even if the signatures evidencing the intention and consent of the parties are admitted to be genuine. Such an act at most constitutes an act under private signature, and a donation of immovable property by act under private signature is null. Gabert v. St. Tammany Yacht Club, 166 La. 57, 116 So. 667 (1928).[5] *575 This conclusion, however, is not determinative of Mr. Sarpy's entitlement to a summary judgment as a matter of law in this case. In response to the petition for declaration of nullity Mrs. Sarpy filed an exception of estoppel, and we must consider the merits of this exception before determining whether or not Mr. Sarpy is entitled to judgment as a matter of law.
In support of her exception of estoppel Mrs. Sarpy points out that in the earlier alimony litigation her husband successfully asserted that her means (primarily the use of and income from the donated properties) were sufficient for her maintenance, and she contends he is now estopped to deny the validity of her title (by transfer from him) when he previously asserted her title ownership as a defense to payment of alimony.
In the earlier litigation Mrs. Sarpy's record ownership of the donated properties and her income therefrom constituted proper evidence bearing on the determination of her means for her maintenance. In the course of the testimony Mr. Sarpy was asked on several occasions to admit that the donations were valid, but he declined to do so, stating that the validity of the marriage contract was being attacked and he had not yet decided whether to attack the validity of the donations.
Mr. Sarpy did not judicially admit the validity of the donations. See C.C. art. 2291. He merely interposed the income and ownership of the donated properties as a bar to his wife's entitlement to alimony at that time.
Moreover, the validity of the donations was not at issue in the alimony litigation, since Mrs. Sarpy's right to alimony had to be determined in a summary proceeding on the existing record ownership of property and could not be delayed because there were pending or potential attacks on the validity of the titles. While Mr. Sarpy's present attack on the donations represents somewhat of an inconsistent position from that previously taken, we perceive no detriment to Mrs. Sarpy's alimony claim. She has enjoyed the use of the properties and received income therefrom since our earlier judgment. A declaration of nullity might constitute a sufficient change in circumstances to entitle her to alimony in view of that change. But the only question now before us is Mr. Sarpy's entitlement to annulment of the donations as a matter of law, and he is not estopped from seeking this annulment because his wife's ownership of and income from the donated properties previously worked to his advantage in the alimony litigation.
However, we perceive another basis for a decision that Mr. Sarpy is estopped from seeking to annul judicially the acts of donation, each of which is valid on its face.
Mr. Sarpy was a lawyer, and the notary public who executed the acts was his secretary. If Mrs. Sarpy can prove he purposefully created a defect in the form of the donations in order to reserve a method of revoking an otherwise irrevocable donation, we would be disinclined to allow use of the courts for the purpose of accomplishing such a scheme. The purpose of requiring an act of donation to be executed before a notary and two witnesses is to protect the donor from fraudulent schemes or undue influence; the requirement was not intended to provide the donor with a scheme for avoiding the effects of C.C. art. 1468's provision for irrevocability of donations inter vivos. See footnote 3. The codal purpose would be distorted if we allowed the use of C.C. art. 1536 as a method for a donor to make a donation revocable at his own will.
This appeal is from a summary judgment. Whether or not Mr. Sarpy should be equitably estopped from asserting the nullity of the donations depends upon unresolved issues of material fact, and Mrs. Sarpy should be allowed an opportunity to prove, at the trial on the merits, the facts necessary to provide a basis for estoppel. We do not attempt to speculate on what facts will support an estoppel, because such a decision always depends upon the facts and circumstances of the particular case. Noting that some facts in the record suggest a basis for applying the doctrine of estoppel, we simply hold that summary judgment is not now appropriate.
*576 Accordingly, the summary judgment is set aside, and the case is remanded for further proceedings.
SET ASIDE AND REMANDED.
LEMMON, Judge, concurs in the denial of the application for rehearing and assigns reasons.
This decision does not, as contended in Mr. Sarpy's application for rehearing, stand for the proposition that title to immovable property can be acquired by estoppel. This decision merely holds that a donor is not entitled to a summary judgment, as a matter of law, when a donation inter vivos (valid on its face) was admittedly signed by the parties outside the presence of a notary, if the donee shows disputed facts to suggest purposeful creation of a formal defect, in order to provide a way out of an otherwise irrevocable act. Whether a donor can set up a defect under C.C. art. 1536, so as to avoid operation of C.C. art. 1468's provision for irrevocability of donations, is a question of law which is more appropriate for decision after a trial on the merits.
Of course, the trial on the merits may not produce sufficient evidence of fraud or deception, damage or detriment, reliance or other factors to support application of estoppel, but our decision simply declares that Mrs. Sarpy is entitled to an opportunity to present such evidence at a trial on the merits.
SCHOTT, Judge, assigns reasons for voting to grant a rehearing.
I have voted to grant a rehearing because I am convinced that our original opinion contains a fundamental error, the correction of which may require that the judgment appealed from be affirmed.
In the first half of an original opinion, we correctly recognized that for a donation inter vivos of immovable property to be valid, the parties must comply with LSA-C.C. Art. 1536. Since these parties did not so comply the only conclusion to follow is that this donation was null. Thus, ownership of the property remained in Mr. Sarpy after the acts of donation were supposedly passed.
What we have done, however, is to permit Mrs. Sarpy to establish her title to the property by estoppel, something clearly prohibited under our law. Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962); Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454 (1955).
Because this is clearly inconsistent with the jurisprudence I would like to reconsider the matter on rehearing.
NOTES
[1] The properties were separate property because of a marriage contract, the validity of which was attacked by Mrs. Sarpy in prior litigation. In December, 1975 (before the present suit was instituted) this court had affirmed a judgment upholding the validity of the marriage contract and dismissing Mrs. Sarpy's demand for alimony on the basis that she had sufficient means for her maintenance. See Sarpy v. Sarpy, 323 So.2d 851 (La.App. 4th Cir. 1975).
[2] C.C. art. 2242 provides:

"An act under private signature, acknowledged by the party against whom it is adduced, or legally held to be acknowledged, has, between those who have subscribed it, and their heirs and assigns, the same credit as an authentic act."
[3] The rationale underlying the imposition of the formality was twofold. A dominating influence can unduly or fraudulently affect a donor's freedom of action, and the requirement of formality was designed to diminish such an influence or at least allow time for reflection when such influence is exerted. The requirement also served to assure the irrevocability of donations by having the instrument filed and preserved by a notary. 3 Planiol, supra, § 2526.
[4] Parol evidence is admissible to establish that an instrument purporting to be an authentic act is not in fact authentic because it was not executed in compliance with codal requirements. American Bank & Trust Co. v. Carson Homes, Inc., 316 So.2d 732 (La.1975).
[5] In another area in which there is the formal requirement of an authentic act, the Supreme Court has held that the authentic act requirement for executory process must be strictly followed and that an act executed outside the presence of the notary is insufficient to support executory process. American Bank & Trust Co. v. Carson Homes, Inc., supra. The dissenting opinion relied on C.C. art. 2242 and 2244, asserting the exact argument made by Mrs. Sarpy in this case.