DOMENGEAUX, Judge.
This is an appeal from Civil Suit No. 78-5044 entitled “Donald John Garrett v. Proverb Shirley Garrett” (Suit 1), which was consolidated for trial with Civil Suit No. 79-1070 entitled “Louisiana Savings Association v. Proverb Shirley Walker and Donald John Garrett” (Suit 2). After consolidation both suits proceeded as suit No. 78-5044, and one judgment was rendered therein. It is this single judgment which comes before us on appeal, therefore, only one judgment will be rendered herein.
Appellant, plaintiff in the first suit, Donald Garrett (hereinafter referred to as Garrett), brought suit against appellee, Proverb Shirley Walker, also known as Proverb Shirley Garrett (hereinafter referred to as Mrs. Walker), seeking to be declared owner of an undivided one-half (Vi) interest in a certain piece of property located in Calca-sieu Parish, Louisiana. Garrett contends that the property located in Calcasieu Parish is community. Mrs. Walker, however, contends that the property in question was purchased with her separate funds, and does not form part of the community then existing between she and Garrett.
Appellee, plaintiff in Suit 2, Louisiana Savings Association (L.S.A.) holds a mortgage on the property in question. When payments on the mortgage note became past due, L.S.A. brought suit against Garrett and Mrs. Walker, in solido, to recover payment of the note herein. Garrett, in response to L.S.A.’s suit contends that L.S. A.’s mortgage was obtained without his knowledge, consent, or ratification, and therefore his one-half (Vi) interest in the property cannot be subject to the mortgage.
This case was originally tried on October 5, 1979, and resulted in a judgment against Garrett holding that the property was the separate property of Mrs. Walker, and recognizing the mortgage which she granted in favor of L.S.A. on the entire property. On the motion of Garrett, a new trial was held on November 25,1980, limited solely to the taking of evidence relative to the source of the downpayment on the house. After this hearing, the court affirmed its earlier decision in favor of Mrs. Walker and L.S.A. From these judgments Garrett has appealed.
Garrett suggests that the trial court erred in:
(1) holding that the property in question is the separate and paraphernal property of the defendant, appellee, Mrs. Walker; and
(2) recognizing the mortgage granted in favor of appellee, L.S.A., on that portion of the property which he claims one-half (Vi) ownership.
Garrett and Mrs. Walker were married on March 8, 1975, in Las Vegas, Nevada, and immediately established a marital domicile in the State of California, where they both resided prior to their marriage. On March 16, 1978, they received an interlocutory judgment of divorce and one and one-half *1311 years later on September 13, 1979, a judgment of final divorce was rendered by the courts of California.
Mrs. Walker has a child by a previous marriage to Timothy Walker, Jr., named Timothy Walker, Jr., II (Timothy), who resides in Lake Charles, Louisiana. On December 28, 1976, Mrs. Walker made an application with L.S.A. in Lake Charles for a real estate loan, the proceeds of which were used to purchase the property in question. The crux of the controversy before us surrounds the nature of the funds used to make the $5,000.00 downpayment on the property. Garrett alleges that the property was purchased without his knowledge or consent with community funds while he and Mrs. Walker were still married to one another. Mrs. Walker on the other hand claims that the downpayment funds represent funds belonging to her son Timothy,[1] which she has been collecting from him and saving in a joint California savings account since 1974.
Two separate hearings were held where evidence establishing the source of the downpayment was heard. After the first hearing, as well as after the rehearing, the trial court held that the funds used to secure the downpayment on the property were in fact the separate and paraphernal property of Mrs. Walker.
The law of Louisiana is clear that property acquired by a wife during the existence of the community of acquets and gains is presumed to belong to the community of acquets and gains. A wife may, however, establish the paraphernality of the property acquired in her own name during the existence of the community by proving:
(1) the funds used came from her separate and paraphernal estate;
(2) her individual administration of the property; and
(3) that the money was invested by her.
Additionally, where the purchase is made on credit, the wife has the further burden of establishing (4) that she not only made the downpayment out of her separate and paraphernal funds, but that she has sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to meet the deferred payments. See Monk v. Monk, 243 La. 429, 144 So.2d 384 (La.1962) and the cases cited therein.
Testimony relative to the source of the $5,000.00 downpayment came from three witnesses who testified at trial, Garrett, Mrs. Walker, and Timothy. Timothy and Mrs. Walker both testified that the funds represented Timothy’s life savings. They allege that in 1974 Mrs. Walker opened a joint savings account in California in her name and that of her son, Timothy. Both Timothy and Mrs. Walker testified that Timothy would have his mother deposit money he earned from several jobs over the years into this joint account.
Garrett testified that he knew nothing of this joint account. His position rests solely on the proposition that property purchased during the existence of the community is presumed to be community property. He contends, that under the test of Monk, supra, his former wife has failed to adequately rebut this presumption.
After a close review of the record before us, we find that the trial court erred in finding that Mrs. Walker satisfied the guidelines set out in Monk. In order to rebut the presumption of community, Monk requires that the wife prove, among other things, that the funds used came from her separate and paraphernal estate, and that where a purchase is made on credit, the purchasing wife has the further burden of establishing that she not only made the downpayment out of her separate and para-phernal funds, but that she has sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to meet the deferred payments.
The testimony of Timothy and Mrs. Walker does not establish that the funds *1312 used for the downpayment on the property in question belong to the separate estate of Mrs. Walker. On the contrary, both Timothy and Mrs. Walker testified at length that the funds used actually represented Timothy’s life savings, and the trial judge so found.[2] There was no evidence produced at trial tending to show that the funds were the separate funds of Mrs. Walker.
Assuming as we will that the funds used for the downpayment actually belonged to Timothy, Mrs. Walker has failed to carry her burden of proof established under Monk. In order to rebut the presumption of community, Mrs. Walker must prove that the source of the downpayment came from her separate and paraphernal funds. Funds belonging to her son Timothy do not form part of her separate estate.
Additionally Mrs. Walker failed to show that she had sufficient separate revenues and funds to meet the deferred payments under the loan. The record clearly shows that Timothy intended to make all of the payments on the mortgage note, and, in fact, did so up until the time he was injured and unable to work. Presuming arguendo that the downpayment represented the paraphernal funds of Mrs. Walker, the deferred payments made by Timothy do not represent revenues of her separate estate, and in any event, absent an authentic declaration of Mrs. Walker’s intention to the contrary, constitute community assets.[3] Accordingly, we find that the record does not support a finding that the property purchased by Mrs. Walker belongs to her separate estate, and therefore we reverse that portion of the trial court’s judgment which recognizes the property to be separate rather than community.
We now turn our attention to the issue of the mortgage in favor of L.S.A. Garrett contends that L.S.A.’s mortgage was given on community property without his knowledge, consent, or ratification, and it is therefore invalid insofar as it relates to his one-half interest in the property. We disagree.
The trial judge in his reasons for judgment made the following observations concerning the issue of ratification. Rather than paraphrase we quote herewith:
“Counsel for Garrett correctly contends that upon a showing that a debt was contracted solely by the wife, the husband and the community are not liable for the debt unless the evidence establishes that the husband clearly and unequivocally ratified the indebtedness. He appropriately cites Rahier v. Rester, [La.App.] 11 So.2d 87, Watson v. Veuleman, [La.App.] 260 So.2d 123, Royal Furniture Company of Baton Rouge v. Benton, 260 La. 527, 256 So.2d 614, and Failla v. Grandeury, [La.App.] 295 So.2d 24, in support of this legal principle.
Here, the debt was contracted solely by the wife without the husband’s knowledge. He, of course, did nothing to ratify the indebtedness, (or the purchase) prior to his finding out about it. Thereafter, he did nothing, with the exception of the filing of this suit, that could be construed as an act of ratification. However, when he filed this suit alleging the property to be community property and claiming an undivided one-half interest therein, this had the effect of ratification of the purchase with the attending indebtedness for a portion of the purchase price. He cannot be heard to claim the ownership and at the same time reject responsibility for the indebtedness for the purchase price.
In each of the above cited cases of Rahier, Watson, and Failla, the court *1313 found that no ratification had occurred, and absolved the husband from liability. But in none of these cases was the husband or the community recognized as the owner of the item purchased by the wife. No case has been cited to the court in which the husband has been permitted to repudiate the indebtedness for the purchase price and at the same time claim ownership of the item purchased by the wife.
There is an inherent inconsistency in the claim of the husband that the property purchased belongs to the community, but that the indebtedness for the purchase price is the separate debt of the wife.”
In Skye Realty Company v. Diversified Insurance Agency, Inc., 221 So.2d 871 (La.App. 3rd Cir. 1969), this Court discussed the legal concept of ratification, and we quote:
“Ratification, as applied to the law of agency, is the adoption or affirmance by a principal of the acts of his agent, either expressly, as by a written act, or impliedly, as by acceptance of the benefits of the contract. 3 Am.Jur.2d 548-561, Agency, Sections 160-175.
These general principles have been recognized in many Louisiana cases. For instance, Gueydan v. T. P. Banch Company, 156 La. 397, 100 So. 541 (1924) contains this language:
‘It is a familiar principle in law that it is not always necessary to show the authority of an officer of a corporation by a resolution of its board of directors. A corporation may not, any more than an individual, reap the benefits flowing from the acts of its officers and repudiate the obligations arising from the same acts. Berlin v. Cusachs, Ltd., 114 La. 744, 38 South. 539; Gair v. Columbia Rice Co., 124 La. [193] 194, 50 South. 8; Boudreaux v. Feibleman, 105 La. [401] 404, 29 South. 881.’ ” (Emphasis added).
Although Garrett had no knowledge of the transaction which led to the purchase of this property, he nonetheless seeks to claim the benefits of this purchase by claiming an undivided one-half interest in the property, and at the same time deny the indebtedness for the purchase price. Such a result would undermine the whole concept of ratification by allowing one to reap the benefits acquired by his agents without being responsible for their accompanying obligations. Accordingly, we find that Garrett has ratified the mortgage on the entire property given by his former wife in favor of L.S.A.
For the above and foregoing reasons the judgment appealed from is reversed in part, affirmed in part, and recast as follows:
It is Ordered, Adjudged, and Decreed that there be judgment in favor of Donald John Garrett, and against Proverb Shirley Walker, recognizing that the following described immovable property situated in Cal-casieu Parish, Louisiana, to be the community property of Donald John Garrett and Proverb Shirley Walker:
“Lot 6 of Block 6 of Highschool Park, a subdivision as per plat recorded in Plat Book 3, page 148, records of Calcasieu Parish, Louisiana, together with all improvements thereon situated.”
It is further Ordered, Adjudged, and Decreed that the mortgage granted in favor of the intervenor, Louisiana Savings Association, on the above described immovable property be recognized and maintained and that, accordingly, the said property be sold, according to law, at public auction, with appraisement, for cash, to the highest bidder, and that out of the proceeds of said sale, intervenor be paid by perference and priority over all other persons whomsoever, the amount of its claim, together with interest, attorney fees, and costs, and that the amount realized for said sale be credited pro tonto upon the amount of judgment herein, and if not sufficient to pay and discharge the same, the unpaid balance of said judgment be enforceable in accordance with the law.
Costs at trial and on appeal are to be taxed one-third (%) to Donald John Garrett, one-third (V3) to Proverb Shirley Walker, and one-third (Vs) to Louisiana Savings Association.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.

. Timothy was not made party to either of these suits, nor has he chosen to intervene herein.

. The trial judge found that the downpayment represented Timothy’s savings even in light of significant inconsistencies in the testimony of Timothy and his mother. For example, Mrs. Walker testified that Timothy would send her all of his earnings, which amounted to $342.00, per month, in the two years Timothy spent in the service. Timothy, on the other hand, testified that he was in the service only eight months during which time he cleared approximately $273.00 per month. Additionally, under the facts presented it seems very unlikely that Timothy would have been able to accumulate the $5,000.00 he alleged in such a short period of time.

. LSA C.C. Art. 2386 (subsequently repealed and replaced by LSA C.C. Art. 2339 in 1981).